**Shellie Dawn NEWMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–00–335 CR.**

Court of Appeals of Texas,
Beaumont.

Submitted May 24, 2001.

Decided June 13, 2001.

Stephen Christopher Taylor, Galveston, for appellant.

Michael A. McDougal, District Attorney, Marc Brumberger, Assistant District Attorney, Conroe, for state.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

**OPINION**

WALKER, Chief Justice.

The grand jury issued a two count indictment accusing Shellie Dawn Newman of intoxication manslaughter and manslaughter. The jury found Shellie Dawn Newman to be guilty of manslaughter, found that she used a deadly weapon in the course and commission of the offense, found her to be a repeat felony offender,[1] and assessed her punishment at twenty years of confinement in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. Newman raises three issues in her appeal.

■ Issue one asks "[w]hether a fatal variance existed between the Indictment and the evidence adduced at trial, in that the evidence failed to prove, beyond a reasonable doubt, that Appellant caused the death of PAUL BISSO." While driving a

---

**1.** The prior offense to which Newman pleaded "true," being a state jail felony at the time of its commission, was not available for enhancement. Tex. Pen.Code Ann. § 12.42(e) (Vernon Supp.2001). A separate enhancement paragraph, alleging a prior conviction for a second degree felony, was abandoned.

black Lumina on May 22, 1998, Newman was involved in a motor vehicle accident with a green Ford Taurus. An eyewitness to the accident referred to the green Taurus as "Mr. Bisso's." The witness was asked, "Did you have, at that point, some idea of what might have happened to Mr. Bisso?" She replied that she "knew because the car was too crushed."

Trooper Mark Hearn identified State's Exhibit No. 5 as "the photographs of the car that was being driven by Mr. Bisso, who was killed." He identified State's Exhibit No. 6 as the "Chevy Lumina driven by the defendant." State's Exhibit No. 21, a diagram of the accident involving Newman and Bisso, identifies the incident as "fatality accident," the date as "May 22, 1998," and the victim as "Bisso, Paul T."

The day following the accident, Dr. Stephen Wilson performed a post mortem examination of the body of Paul Theodore Bisso. According to Dr. Wilson, Paul Theodore Bisso died of multiple blunt force injuries consistent with a bad motor vehicle accident.

■ Newman notes the lack of evidence regarding how the victim was identified, and whether the victim who was dead at the scene was transported to the Harris County Medical Examiner's office for autopsy. Evidence specifying a victim's name, admitted without objection, is sufficient to prove the identity of the complainant. *See Lopez v. State,* 482 S.W.2d 179, 182 (Tex.Crim.App.1972). Witnesses repeatedly referred to the person who died in the accident as "Mr. Bisso," an exhibit illustrating the accident identified the victim as "Paul T. Bisso," and the day following the accident a medical examiner performed a post mortem examination on the body of "Paul Theodore Bisso," a motor vehicle fatality. We hold the trier of fact could have rationally found the identity of the complaining witness as "Paul Bisso" to

have been proven by the State. *See Dunn v. State,* 951 S.W.2d 478, 480 (Tex.Crim. App.1997). Issue one is overruled.

■ Issue two asks "[w]hether the admissible evidence adduced at the trial of the case was legally insufficient to support Appellant's conviction for the felony offense of MANSLAUGHTER, in that the evidence failed to prove, beyond a reasonable doubt, that Appellant recklessly caused the death of PAUL BISSO." Newman was driving on a two-lane, shoulderless, hilly country road with a 45 mph speed limit. Brandi Koonce testified that Newman's vehicle approached her from behind. The driver was shaking her fist at Koonce. Koonce slowed down. Newman passed Koonce while on a level piece of road, but after passing Koonce continued to travel in the opposing lane of traffic as she proceeded up a hill. As she passed, Newman was looking at Koonce, not at the road. Newman failed to move over, even after there was room to do so. Newman passed a pickup truck at an extremely high rate of speed, moving into the opposite lane of traffic and fish-tailing. As she crested the hill, Newman came into contact with Bisso's car. An accident reconstructionist testified Newman was traveling 87 mph at first impact.

Newman argues her state of mind could not be reckless as to a vehicle of which she was not actually aware. A reckless state of mind requires awareness, but conscious disregard, of a substantial and unjustifiable risk that the result will occur. Tex. Pen.Code Ann. § 6.03(c) (Vernon 1994). In *Cooks v. State,* 5 S.W.3d 292, 296 (Tex. App.—Houston [14th Dist.] 1999, no pet.), the Court of Appeals found that driving close to 100 mph in a 55 mph zone revealed conscious risk creation. In *Porter v. State,* 969 S.W.2d 60, 63–64 (Tex.App.—Austin 1998, pet. ref'd), the Court of Appeals found sufficient evidence of a reckless

state of mind when a fatigued driver permitted his vehicle to cross into a lane for opposing traffic. Here, Newman drove at a speed that is not legally permitted on any Texas highway and moved into the lane provided for traffic moving in the opposite direction while she did not have adequate control over her vehicle. After passing Koonce's vehicle, Newman remained in the oncoming traffic lane where she could not have had an adequate view of the road ahead. As roads are made for travel by motor vehicles, the likelihood that one will encounter a motor vehicle on a road is obvious. The State did not have to prove that Newman was actually aware of the presence of Bisso's vehicle in order for her presence in his lane of traffic to reveal conscious risk creation. Issue two is overruled.

■ In her final issue, the appellant Newman maintains the trial court reversibly erred when it "erroneously submitted within its charge to the Jury in the punishment phase, an instruction on Parole which failed to state the mandatory language set out in [TEX.CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon Supp.1997) ]."

An affirmative finding of the use of a deadly weapon was made in the guilt-innocence phase of the trial. Therefore, the statutorily mandated charge reads:

"Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, *without consideration of any good conduct time he may earn.* If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX.CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon Supp.2001) (emphasis added).

In this case however, the third paragraph of the statutory charge stated:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, she will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-half of the sentence imposed or 30 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

The crucial difference between the statutory charge and that provided to the jury resulted in the jury being incorrectly informed that good conduct time would be considered in calculating the one-half of the sentence Newman would be required to serve before being eligible for parole.

■■■■ As Newman did not object to the charge, we may reverse the judgment only if the harm was so egregious that the accused did not have a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

We have addressed this issue before. *Shavers v. State,* 985 S.W.2d 284, 291–92 (Tex.App.—Beaumont 1999, pet. ref'd). In concluding no egregious harm resulted from the error, we considered: 1) the charge instructed the jury to not consider the manner in which the parole law might be applied to the defendant; 2) there was no evidence the jury was confused about the instructions in the charge; 3) no motion for new trial was filed, and nothing in the record suggests the jury discussed, considered, or tried to apply good conduct time or the parole law in assessing punishment; 4) neither the State nor defense counsel mentioned parole; 5) there was substantial evidence of guilt; and 6) the jury assessed punishment at less than the maximum sentence. *Id.* at 292.

■■■■ One other court considering this issue disagreed with our opinion in *Shav-*

ers. *See Hill v. State,* 30 S.W.3d 505, 508–09 (Tex.App.—Texarkana 2000, no pet.). The Court of Appeals reasoned that the instructions mislead the jury about the general existence of the parole laws and good conduct time, so an instruction not to consider how those laws apply to the defendant would not cure the error. *Id.* Admittedly, the presence of the further instructions does not "cure" the error, in the sense that the instructions to the jury have been corrected. Rather, the "curative" instruction prevents harm to the defendant by warning the jury that it cannot consider parole and good conduct in assessing the sentence. We generally presume that a jury follows the instructions given by the trial judge in the manner presented. *Rose v. State,* 752 S.W.2d 529, 554 (Tex.Crim.App.1988) (op. on reh'g). Here, the jury was instructed not to consider the effect of parole and good time on Newman.

Although the charge presented to Newman's jury stated the parole law incorrectly, the charge also instructed the jury to not consider the manner in which the parole law might be applied to her. The jury did not send any notes to the judge questioning the instructions. Neither advocate mentioned the parole instruction.[2] Unlike *Shavers,* the jury in this case assessed the maximum available sentence. In *Shavers,* however, the defendant received an eighty year sentence, and therefore would have to serve the maximum time in prison before being eligible for parole. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318 § 64, 1995 Tex. Gen. Laws 2734, 2755.[3] Although Newman filed a motion for new

---

2. In what was perhaps an oblique reference to the parole instruction, defense counsel said, "I'm sure we've all heard how people get out of prison, you know, the swinging

door system, and whether that's true or not, it's not going to be true in this case."

3. For current statute, *see* Tex. Gov't Code Ann. § 508.145 (Vernon Supp.2001).

trial, the error in the charge was not raised in that motion.

The State introduced three prior convictions in the punishment phase of the trial. Although there was unobjected-to error in the charge regarding these extraneous offenses,[4] Newman did not dispute having committed those offenses and they supported punishment in the upper limit of the punishment range for manslaughter. The circumstances of the offense, in which Newman caused the death of an unsuspecting passing motorist, also support a severe sentence.

The jury charge pertaining to the effect of good conduct time did not relate to a contested issue, and the parties did not refer to that part of the charge during argument. There is no indication in the record that the jury considered the effect good conduct time might have had on the time served by the defendant. The unobjected-to error did not affect the very basis of the case, nor was the case for punishment actually made clearly and significantly more persuasive by the error. *See Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim.App.1996); *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991). The error committed by the trial court in informing the jury was not reasonably likely to cause the jury to increase the sentence.

We conclude the error in the jury charge was not egregious. Issue three is overruled. The judgment and sentence are affirmed.

AFFIRMED.

---

4. The trial court did not include a reasonable doubt instruction on the burden of proof for extraneous offenses. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App.2000). Also, the trial court instructed the jury to find the enhancement paragraph to be "true," although the enhancement allegation presented to the jury could not alter the range of punishment.