NO. 07-02-0484-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

NOVEMBER 30, 2004

_____

DANIEL E. IGO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-400004; HONORABLE CECIL PURYEAR, JUDGE

_____

Before QUINN and CAMPBELL, JJ. and BOYD, S.J.[1]

**OPINION**

Daniel Igo brings this appeal from his conviction for the felony offense of sexual assault and jury assessed punishment of twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm the trial court's judgment.

---

[1]John T. Boyd, Chief Justice (Ret.) Seventh Court of Appeals, sitting by assignment.

At the time of the events giving rise to appellant's prosecution he was a math teacher in the Ector County Independent School District.[2] He was 38. On the afternoon of Friday, January 28, 2000, appellant and a fifteen-year-old female student, K.H., drove from Odessa to Lubbock. On arriving in Lubbock appellant obtained a motel room and took K.H. to a shopping mall, where he purchased an item of lingerie. Appellant does not dispute that he spent the night at the motel with K.H. The following morning appellant attended a teachers conference in Lubbock. The pair returned to Odessa Saturday afternoon.

On her return, K.H.'s mother questioned her regarding where she had been. After initially saying she went to Lubbock with "friends," K.H. eventually admitted she had gone with appellant, and told her mother they had sex at the motel. K.H.'s mother informed school officials, leading to a criminal investigation and the instant prosecution. Over his plea of not guilty, appellant was found guilty by a jury which also assessed the maximum sentence of twenty years confinement. He now presents five points of error challenging his conviction and sentence. In those points appellant complains of the State's jury argument, submission of an improper instruction, limitations placed on his cross-examination of the complainant and her mother, and a failure to disclose evidence favorable to him.

---

[2]As appellant does not challenge the sufficiency of the evidence supporting the judgment of conviction, we discuss only such of the evidence as is necessary to disposition of the points of error.

Appellant's first point assigns error to the overruling of his objection to a portion of the State's argument during closing arguments in the trial's guilt-innocence stage. The challenged statement occurred at the beginning of the State's rebuttal argument and provided, in relevant part:

> Prosecutor: That's what the defense argued to you, "we know better than to trust those young people." Let me give you an example. We have a bailiff in this courthouse that used to be a coach at Monterey. I have seen people who went to Monterey come up to him, and him as a teacher and a coach,

> Defense counsel: Your Honor, this is outside the record.

> Court: Overrule. Go ahead with your argument, counsel.

> Prosecutor: We all respect our teachers. I have had teachers that I see later and you think of that memory, you remember that person. I have seen his students come up to him and say that with great respect, "Hey, coach." It had been 20 years since these people have been in school. "Hey, coach." That respect is ingrained in their voice, that trust, that bond they had with him. That's a teacher. That's why we send our children to school. We do not send our children to school to be raped. We send our children to school to be educated.
>
> * * *
>
> It is the teacher's responsibility, not the child's. Who was accountable? The teacher.

Appellant contends the argument was improper and harmful because it made reference to facts outside the record. Citing *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Crim.App. 1993), the State initially argues any error was waived because appellant failed to pursue his objection to an adverse ruling. We disagree. We perceive the court's use of the word "overrule" as evidencing an adverse ruling with sufficient clarity to satisfy

appellant's burden. The State also relies on *Briones v. State*, 12 S.W.3d 126, 129 (Tex.App.--Fort Worth 1999, no pet.), contending the objection was waived when he failed to repeat his objection when the prosecutor continued the argument concerning the former teacher. We cannot agree the error was waived from his failure to repeat the objection immediately after it was overruled, and do not find *Briones* dispositive.[3] The opinion in *Briones* does not indicate whether the unchallenged statements were made immediately after the objection was overruled or at another point in the trial. 12 S.W.3d at 129.

Appellant cites *Cantu v. State*, 939 S.W.2d 627 (Tex.Crim.App. 1997), as setting out the four permissible areas for closing argument. They are, (1) summation of the evidence, (2) reasonable deductions drawn from the evidence, (3) answer to opposing counsel's argument, and (4) pleas for law enforcement. *Id.* at 633.[4] He also relies on our opinion in *Fant-Caughman v. State*, 61 S.W.3d 25 (Tex.App.–Amarillo 2001, pet. ref'd), noting an argument is improper if it makes reference to matters beyond the record. *Id.* at 28. Improper jury argument has been said to constitute reversible error only if, in the light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts which are harmful to the accused. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App.1996); *Fant-Caughman*, 61 S.W.3d at 28. *See Hawkins*

---

[3]This is not a situation in which objection is waived when the same evidence is admitted "elsewhere" without objection. *See, e.g., Penry v. State*, 691 S.W.2d 636, 655 (Tex.Crim.App. 1985).

[4]*But see Hawkins v. State*, 135 S.W.3d 72, 85 (Tex.Crim.App. 2004) (concurring opinion by Judge Womack, criticizing "four permissible areas" analysis of argument error).

*v. State*, 135 S.W.3d 72, 80 (Tex.Crim.App. 2004) (three-fold standard for argument error regarding extreme arguments, statutory violations and new facts relates to error, not harm).

The State's argument was within one of the four general permitted areas for jury argument. Appellant's counsel had referred to the dangers of trusting young people, stating "we trust these kids, and then we get hung for it." The argument also included the statement quoted by the prosecutor, "We know better than to trust these young people." The State's argument responded it was the student whose trust was misplaced here. That was a permissible area for its closing argument. *Cantu*, 939 S.W.2d at 633.

Appellant points to two assertions in the State's argument for which there was no evidence, first, that a bailiff had been a coach at Monterey High School; and secondly, that former students approached him "in a trusting and respectful manner." There are two reasons we find the trial court did not err in overruling the defense's objection to the argument.[5] First, the prosecutor referred to the bailiff and former coach merely as an example of the type of teacher for whom former students have respect. Appellant's brief recognizes the argument referred to people "totally uninvolved in the instant case." The argument did not name the bailiff or any former student who had approached him. The argument is analogous to those involving matters of common knowledge which are permissible even without evidentiary support. *See Nenno v. State*, 970 S.W.2d 549, 559 (Tex.Crim.App. 1998), overruled on other grounds, *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App. 1999). A different question would be presented if the prosecutor had, for

---

[5] We reject the State's contention that the argument was invited because defense counsel's argument was outside the record.

example, named the former teacher and asked the jury members to recall their trust and respect for him.[6]

Secondly, as noted in *Wilson*, our determination of whether an improper argument constitutes reversible error depends on whether it "injects a new and harmful fact into the case." 938 S.W.2d at 59. Clearly the facts injected in the challenged statements were new, but we are not persuaded they were harmful to appellant. They do not address any element of the offense or any fact the jury was asked to find to convict appellant. Because K.H. lacked legal capacity to consent to sexual relations with appellant, the existence of trust between the parties was not relevant. We overrule appellant's first point.

Appellant's second point challenges the denial of his motion for new trial on the basis of an erroneous jury instruction. His third issue is based on the same jury instruction, but is submitted conditionally on our overruling his second issue. We discuss the issues together.

The charge error occurred in the parole instruction during the punishment phase of the trial. Both parties agree the trial court should have instructed the jury in accordance with Code of Criminal Procedure article 37.07, section 4(a), which provides appellant would not become eligible for parole until the actual time he served equaled one-half of the sentence imposed. Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon Supp. 2004). The instruction given by the court in this case was the one contained in Section 4(c), which

_____

[6]There is no suggestion in the record the bailiff was associated with the court in which appellant was tried. The prosecutor referred to a bailiff "in this courthouse."

-6-

provides a defendant would "not be eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed." Appellant failed to object to the erroneous instruction before it was given to the jury. His first challenge to the jury charge was through a motion for new trial where he alleged the court, "in its charge to the jury on punishment, misdirected the jury on the law in this case."

Appellant provided the trial court with the specific basis of his complaint at a hearing on the motion for new trial. He relied on Rule of Appellate Procedure 21.3(b), providing a new trial must be granted "when the court has misdirected the jury about the law." At the conclusion of the hearing, the court overruled the motion, finding the jury was properly instructed. The motion was also denied by written order.

Relying on the mandatory language of Rule of Appellate Procedure 21.3(b) appellant now contends the court's denial of his motion for new trial was an abuse of discretion and establishes reversible error. The State responds that the proper standard is set out in article 36.19 of the Code of Criminal Procedure and, because no timely objection was presented to the jury charge, appellant must show the error was so egregiously harmful as to deprive him of a fair and impartial trial.[7] Well established

_____

[7]Citing cases that include *Arroyo v. State*, 117 S.W.3d 795 (Tex.Crim.App. 2003), *State v. Mercado*, 972 S.W.2d 75 (Tex.Crim.App. 1998), and *Reyes v. State*, 69 S.W.3d 725 (Tex.App.–Corpus Christi 2002, pet. ref'd), appellant initially contends the State should not be permitted now to argue the trial court did not abuse its discretion by overruling the motion for new trial because the State "confessed error" at the hearing on that motion. At the hearing on the motion for new trial, the prosecutor agreed with appellant's counsel that the jury charge contained the wrong parole law instruction. The prosecutor also argued, though, that the jury was instructed not to consider the manner in which the parole law applied to appellant. As is discussed hereinafter, that contention is a common element of the analysis applied to parole instruction error under *Almanza*. Even assuming that, under

authority supports the State's position on the applicable standard. The Court of Criminal Appeals' opinion in *Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex.Crim.App. 1984), construing the standard adopted by the legislature in article 36.19, continues to define the manner in which we are to measure charge error in criminal cases. That standard applies even though the charge error is characterized as misdirection of the jury in a motion for new trial under Rule 21.3. *Henderson v. State*, 82 S.W.3d 750, 753 (Tex.App.--Corpus Christi 2002, pet. ref'd). *See also Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); *Salazar v. State*, 38 S.W.3d 141, 147-48 (Tex.Crim.App. 2001) (harm analysis in appellate review of denial of new trial sought because of jury's discussion of parole during deliberations).

To assess the degree of harm resulting from jury charge error, we consider the factors set out in *Almanza*. They include the entire jury charge, the state of the evidence, the argument of counsel and any other relevant information shown by the record. 686 S.W.2d at 171.

Examining the entire parole instruction, we note the language of the instructions prescribed by sections 4(a) and 4(c) is identical except for that in the third paragraph of each, by which the jury is told how much of the sentence they impose the defendant must serve before becoming eligible for parole, and whether good conduct time will enter into the calculation. The erroneous language here thus occurs in the sentence the Court of

---

the cases appellant cites, the prosecutor's argument at the hearing was the kind of conduct that might prevent the State from raising an argument on appeal, the State did not concede the parole instruction error was reversible and is not barred or estopped from arguing otherwise here.

Criminal Appeals has referred to as "the heart of the matter" of the parole instruction. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex.Crim.App. 2002). The jury was instructed that appellant would be eligible for parole when his time served equaled one-fourth of the sentence imposed. Too, the instruction given mistakenly informed the jury good conduct time would count toward appellant's parole eligibility. He actually will not be eligible for parole until he serves half of the sentence imposed, without consideration of good conduct time.[8] The instruction given told the jury, then, that appellant could be paroled in less than five years of the twenty-year sentence imposed, when he actually will not be eligible until he serves ten years.

The State points to the paragraphs of the charge sometimes characterized as "curative," *see, e.g., Love v. State*, 909 S.W.2d 930, 935 (Tex.App.–El Paso 1995, pet. ref'd), by which the jury was instructed not to consider how the parole law might be applied to appellant. When, as here, there is no record evidence the jury violated that part of the instruction, courts often have cited it in finding an absence of egregious harm. *See Taylor v. State*, No. 06-03-0166-CR, 2004 WL 2290241 (Tex.App.–Texarkana, October 13, 2004, no pet. h.); *Newman v. State*, 49 S.W.3d 577 (Tex.App.–Beaumont 2001, pet. ref'd); *Shavers v. State*, 985 S.W.2d 284 (Tex.App.–Beaumont 1999, pet. ref'd); *Love*, 909 S.W.2d at 935. *See also Ross v. State*, 133 S.W.3d 618, 624 (Tex.Crim.App. 2004) (considering both constitutional and statutory challenges to parole instruction); *Luquis*, 72 S.W.3d at 366 (considering due process challenge to parole instruction). *But see Hill v.*

---

[8]Further, those convicted of sexual assault under Penal Code section 22.011 do not accrue good conduct time for purposes of release on mandatory supervision. Tex. Gov't. Code Ann. § 508.149(a)(6) (Vernon Supp. 2004).

*State*, 30 S.W.3d 505 (Tex.App.–Texarkana 2000, no pet.) (finding egregious harm from parole instruction error despite "curative" language).

Parole was not mentioned by either counsel during argument on punishment. At the punishment stage, appellant presented the testimony of family members and a family friend. The record indicates appellant was eligible for probation, and his counsel urged the jury to recommend probation. The prosecution argued for the maximum sentence of confinement. Appellant points to the jury's adherence to the State's recommendation of twenty years' confinement as showing harm from the erroneous instruction. In response, the State contends the jury was more likely moved to the maximum sentence by appellant's abuse of his position as a teacher and evidence he talked with another female student about a trip to Lubbock, continued a sexual relationship with K.H. after his indictment and "even attempted to bribe her to drop the charges."

In *Shavers* and *Newman* the appellate court considered the failure to raise the issue in a motion for new trial as a factor weighing against egregious harm. 985 S.W.2d at 292; 49 S.W.3d at 581-82. Here appellant did present his complaint to the trial court through a motion for new trial.

It is appellant's burden to show the harm he suffered because of the court's erroneous instruction. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App. 1994); *see State v. Toney*, 979 S.W.2d 642 (Tex.Crim.App. 1998) (Keller, J., concurring) (noting placement of burden on defendant to show harm as difference between harm analysis under *Almanza* and that applicable to other errors). The harm must be actual, not just

theoretical. *Almanza,* 686 S.W.2d at 174; *Cormier v. State,* 955 S.W.2d 161, 164 (Tex.App.–Austin 1997, no pet.). Although the jury was significantly misinformed about the application of the parole law to appellant,[9] on this record we can but speculate on the actual harm to appellant flowing from the error. The record does not demonstrate egregious harm. It follows that the trial court did not abuse its discretion in denying appellant's motion for new trial. We overrule appellant's second and third points.

Appellant's fourth and fifth points concern prior allegations of sexual assault of K.H. by others. In his fourth point appellant assigns error to the denial of any opportunity to cross-examine K.H. and her mother before the jury on the prior accusations. Appellant argued to the trial court, as he does on appeal, the evidence was relevant to the issue of the complainant's credibility. Appellant's fifth point is related and challenges the denial of an opportunity to examine police reports of K.H.'s prior allegations of sexual abuse.

Outside the presence of the jury, appellant elicited testimony from K.H. and her mother on three prior allegations. In the first, the complainant's mother reported to police an incident in which an adult male family friend named Phillips "climbed in bed" with K.H. and his daughter in 1998. According to her mother's testimony, K.H. said "it scared her." K.H. testified Phillips "was trying to mess with me, with his daughter sleeping next to me." No charges were filed against Phillips.

---

[9]The trial court's statement, made in denying appellant's motion for new trial, that the jury was properly charged, was thus incorrect. The court's denial of the motion, however, is to be upheld if correct on any applicable theory of law. *Martinez v. State,* 74 S.W.3d 19, 21 (Tex.Crim.App. 2002).

In the second incident, the mother called police after she found K.H. and a 23-year-old man named Rowton[10] sleeping naked on the floor of her house. K.H. was 16 years old at the time and did not claim she had been assaulted. She testified she was dating Rowton. Again, no charges were filed against Rowton. Thirdly, both K.H. and her mother testified K.H. had alleged her father sexually assaulted her over a period of several years. The mother reported that allegation to the police in 1997. She stated the father took a polygraph examination, "passed" it, and was not charged with any offense.

Appellant relies on the Court of Criminal Appeals' opinion in *Lopez v. State*, 18 S.W.3d 220 (Tex.Crim.App. 2000), in support of his contention the Confrontation Clause of the Sixth Amendment to the U.S. Constitution establishes his right to cross-examine K.H. and her mother on the subject of prior false accusations by K.H. of sexual assaults by others. In *Lopez*, the defendant in a sexual assault prosecution sought to question the complainant on a prior claim of physical abuse by his mother. *Id.* at 221-22. The prior complaint was "closed" by authorities without any action taken against the mother. *Id.* at 222. The court analyzed the issue as whether application of Rule of Evidence 608(b), excluding evidence of prior conduct used to challenge credibility, was violative of the Confrontation Clause in that circumstance. *Id.* at 222-23.

The court in *Lopez* found the defendant had a "heightened need" to impeach the credibility of the complainant because the trial was a "swearing match" between the two. *Id.* at 225. Acknowledging that evidentiary rules must give way before the requirements

---

[10] The record also contains the spelling Routen, but it is clear both spellings refer to the same person.

of the Confrontation Clause, the court nevertheless found the proffered evidence was properly excluded because the prior allegation was not similar to the facts of the prosecution at issue and, most significant here, the prior allegation was not shown to be false. *Id.* The court recognized the failure to prosecute may be the result of a lack of evidence to prove a claim or the result of an administrative decision, and does not necessarily demonstrate the claim was false. *Id.* at 225-26.

Appellant argues K.H. was the State's only witness to the alleged act of sexual intercourse, so his need to impeach her credibility was similarly great. We cannot agree that the state of the evidence in this case is comparable to that in *Lopez*. The *Lopez* opinion notes the State there had no evidence of the defendant's guilt other than the victim's testimony. *Id*. Here, appellant admittedly took K.H. to Lubbock with him and stayed with her overnight in a motel room. This case was not simply a swearing match.

Two of the three prior allegations appellant sought to examine bear similarity to the allegation against appellant.[11]  Both involve allegations by K.H. that she was sexually assaulted by a substantially older man. But that is where the similarity ends between those allegations and K.H.'s testimony against appellant. The overnight travel and motel stay differentiate the allegation involved here and significantly reduce the probative value of any comparison with K.H.'s previous accusations.

---

[11] The complaint K.H.'s mother made against Rowton is not relevant because it was not made by K.H.

Moreover, we cannot agree with appellant's contention he proved the previous allegations were false. The testimony given by K.H. and her mother outside the presence of the jury indicated that neither Phillips nor K.H.'s father was prosecuted, but as the court noted in *Lopez*, the failure to prosecute does not establish that a complaint is false. 18 S.W.3d at 225-26. Even if the decision not to prosecute K.H.'s father was the result of a polygraph examination,[12] appellant would be unable to present that evidence at trial because such results are inadmissible. *See Tennard v. State*, 802 S.W.2d 678, 683 (Tex.Crim.App. 1990).

Appellant's brief states his belief our review of sealed records included in the appellate record will support his position on his fourth point. Appellant caused a subpoena to be issued to the Odessa Police Department, seeking reports from two files. In response, the City of Odessa filed a motion to quash and requested in camera review of the reports. The motion was based on Section 261.201 of the Family Code, which declares reports of abuse confidential. *See* Tex. Fam. Code Ann. § 261.201 (Vernon 2002). Without making findings on the matters set out in that statute, the trial court denied the motion to quash but ruled the documents inadmissible and did not allow trial defense counsel to review them. The State's brief states that neither did the prosecutors have access to the reports. The reports have been included in the record, under seal, for our review of the trial court's ruling.

---

[12] Appellant has not offered any evidence beyond the speculation of K.H.'s mother that the decision not to prosecute her father was the result of the polygraph examination. The sealed documents in this record do not address K.H.'s allegation against her father.

The sealed documents include Odessa police reports concerning the incidents involving Phillips and Rowton. With regard to Rowton, as noted, the allegation against him was made solely by K.H.'s mother. Consequently, the truth or falsity of those allegations would not be relevant to K.H.'s credibility.

Consideration of the report concerning Phillips requires a summary of that report.[13] It contains the reporting officer's summary of K.H.'s statement to him that when she stayed at the Phillips home in October 1998 she woke up with Phillips laying next to her and he touched her genitals with his hand. She "yelled at" him to get away from her and he left. K.H. did not tell anyone until January 12, 1999, when she told Phillips' cousin. The cousin told K.H.'s mother on January 23, 1999, who notified police.

A supplemental report dated January 25, 1999, contained notes of additional interviews with K.H.'s mother and sister, and Phillips. The mother told the officer she "wants to believe her daughter, but daughter has made 2 false accusations in past." The report recited K.H.'s mother also stated when she asked K.H. about the incident she "was eager to tell her the details," but on that occasion (contrary to K.H.'s later report) said Phillips touched her only on top of her clothes. K.H.'s sister told their mother she was in the bed with K.H. and would have awakened if what K.H. described had happened. The sister's later statement to the officer differed slightly in that she asserted she was awake

_____

[13] Our decision to summarize the contents of the reports here is consistent with the policy considerations of Section 261.201(b) of the Family Code which permits disclosure of otherwise confidential information if the information is essential to the administration of justice and not likely to endanger the life or safety of the parties involved. Too, much of the information was revealed also by the testimony of K.H. and her mother, which, although it was taken outside the presence of the jury, was not sealed.

until Phillips arrived early that morning. Phillips came to see the officer when he heard of the accusation and denied "any touching of victim." The report concluded with the notation "recommend case be unfounded."

The report fails to establish K.H.'s accusation against Phillips was false. It shows conflicting accounts of the incident and reflects Phillips' denial that he improperly touched K.H. The mother's statement indicates her doubt that K.H.'s accusation was true. The report certainly sheds light on the authorities' decision not to initiate a prosecution of Phillips. But none of that information establishes that K.H.'s accusation of Phillips was false.

The report quotes K.H.'s mother as making reference to "2 false accusations in the past." Presumably, the mother was referring to K.H.'s previous accusation against her father. Again, though, K.H.'s mother's description of the accusations as false does not establish they were false.

In accord with *Lopez*, we balance the probative value of the evidence concerning K.H.'s previous accusations against the risks involved with admission of the evidence. As in *Lopez*, we conclude K.H.'s previous accusations of sexual abuse were neither proven to be false nor sufficiently similar to her testimony against appellant to have probative value in impeaching her credibility outweighing the risk of confusing the issues. *See Lopez*, 18 S.W.3d at 226. Even augmented by the police reports, we cannot agree the record shows the trial court's denial of an opportunity to cross examine K.H. or her mother on the prior

incidents deprived appellant of his constitutional right of confrontation. We overrule appellant's fourth point.

Appellant's fifth point is couched as a contention that disclosure of the reports to him was required by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which recognized a constitutional right to have the government disclose evidence which is material and exculpatory. *See also Hampton v. State*, 86 S.W.3d 603, 612 (Tex.Crim.App. 2002). The doctrine adopted in *Brady* encompasses impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). To demonstrate reversible error for violation of *Brady* rights, a defendant must show the State failed to disclose evidence, regardless of the prosecutor's good or bad faith; the withheld evidence is favorable to the defendant; and the withheld evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton*, 86 S.W.3d at 612.

The State argues there was no *Brady* violation because any information in the reports was not suppressed by the prosecution because the reports were not in the possession of any member of the Lubbock County "prosecution team," but were held by the Odessa Police Department, citing in support cases including *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex.Crim.App. 1993), *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex.Crim.App. 1990), and *Ex parte Brandley*, 781 S.W.2d 886, 892 n.7 (Tex.Crim.App. 1989). The State also cites the prosecution's unsuccessful efforts to locate records held by the Odessa Police Department, and the indications in the record that at least some

detailed information concerning the prior allegations was already available to the defense. For purposes of this opinion, we assume, without deciding, that under the circumstances of this case reports of the Odessa Police Department were at least potentially subject to disclosure under *Brady* and appellant has satisfied the element of showing the State failed to disclose evidence.[14]

With respect to the third element, to evaluate the materiality of the withheld evidence, we must consider the entire record. *See Hampton*, 86 S.W.3d at 612. The mere possibility the information might have affected the trial's outcome does not make it material in the constitutional sense. *Id.*, citing *U.S. v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The inquiry is whether the failure of its disclosure undermines confidence in the jury's verdict. *See Ex parte Richardson*, 70 S.W.3d 865, 870 n.22 (Tex.Crim.App. 2002); *Ex parte Adams*, 768 S.W.2d 281, 290-91 (Tex.Crim.App. 1989).

Balancing the strength of the withheld evidence against the evidence supporting conviction, *see Hampton*, 86 S.W.3d at 613, we find the verdict in this case well supported by the record. *See Thomas v. State*, 841 S.W.2d 399, 405 (Tex.Crim.App. 1992). By the time of trial, K.H. was eighteen. Her testimony was clear. Her travel alone with appellant from Odessa to Lubbock was verified by her knowledge of the speeding ticket he received

---

[14]We recognize the police reports here were in the possession of the trial court. We analyze the trial court's decision not to disclose the reports under the same standard applicable to a prosecutor's failure to disclose. *Cf. Agurs*, 427 U.S. at 106-08; *Thomas*, 841 S.W.2d at 407 (citing *Agurs* and stating prosecutor who is unsure whether evidence requires disclosure should submit it to trial judge). Our discussion of appellant's fifth point should not be read to indicate disagreement with the conclusion of the City of Odessa that the reports were protected from disclosure under Family Code section 261.201. The correctness of that conclusion is not before us.

on the way, and by the testimony of the policeman who noted her presence in the vehicle. Her presence in the motel room was verified by her description of the room, and her knowledge of telephone calls made from the room and the television movie charged to the room. Her testimony concerning the "tan line" on appellant's upper thighs was supported by testimony from appellant's former wife. Although testimony adduced by appellant asserted the lingerie outfit he purchased at a shopping mall in Lubbock was a gift for his wife, the item was in K.H.'s possession when the two returned to Odessa. Laboratory analysis of stains on the item revealed the presence of semen but could not identify its contributor. Given this record, we find there is not a reasonable probability the outcome of the trial would have been different if the Odessa police reports had been disclosed to the defense.

Further, the prosecutor's duty under *Brady* does not extend to turning over evidence that would not be admissible at trial. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex.Crim.App. 1993). In our disposition of appellant's fourth point, we have rejected his contention based on *Lopez* that he was entitled to cross-examine concerning K.H.'s accusations of Phillips and her father. We must similarly conclude that the evidence contained in the police reports concerning that conduct would not have been admissible to attack K.H.'s credibility. *See* Tex. R. Evid. 608(b). We overrule appellant's fifth point of error.

Having overruled appellant's points of error, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

-19-