

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00087-CR

**ANTHONY LEIGH WEST,**

                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                **Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court No. F379-19

## MEMORANDUM OPINION

Anthony West was charged by indictment with evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04. The jury found West guilty, found both enhancement allegations true, and assessed his punishment at thirty-five years in prison. In three issues, West challenges the jury charge at the guilt-innocence and the punishment phases of trial and the assessment of several court costs. We affirm as modified.

### Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether the charge contains error. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If the jury charge contains error, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). The court will reverse if an error was properly preserved by objection and is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, where a party does not properly preserve error by proper objection, the court will only reverse for egregious harm, meaning West did not receive a fair and impartial trial. *Id*. To obtain a reversal for jury-charge error, West must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

West did not object in the trial court to the complaints he how makes regarding either jury charge; thus, he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**The Guilt-Innocence Charge**

In his first issue, West argues that the trial court failed to limit or tailor the definitions of the culpable mental states to the offense of evading arrest. West contends that he was egregiously harmed by these errors.

The culpable mental states in the penal code encompass three possible conduct elements that may be involved in an offense: (1) nature of the conduct; (2) result of the conduct; and (3) circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03; *see McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). When an offense is specifically delineated as to the type of conduct, the trial court should limit the statutory definitions in the jury charge to the culpable mental state required. *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

Here, West was charged by indictment with evading arrest or detention with a motor vehicle. A person commits the offense of evading arrest or detention if the person "intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). This court, in *Riggs v. State*, concluded that "the offense of evading arrest or detention also includes two, and only two, conduct elements: 'nature of the conduct' which applies to the element of intentionally fleeing and 'circumstances surrounding the conduct' which applies to the

element of knowledge that a peace officer is attempting lawfully to arrest or detain the person." 482 S.W.3d 270, 275 (Tex. App.—Waco 2015, pet. ref'd).

In the trial court's charge, the definitions of intentionally and knowingly followed section 6.03 of the Penal Code. *See* TEX. PENAL CODE ANN. § 6.03(a)-(b). Specifically, the abstract portion of the jury charge provided the following definitions for intentionally and knowingly:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or to cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

The definition for "intentionally "tracks the entirety of the language in section 6.03(a) of the Penal Code, whereas the definition for "knowingly" is limited to nature-of-conduct and circumstances-surrounding-the-conduct elements. *See id.* § 6.03(a)-(b). However, pursuant to *Riggs*, the definition for "intentionally" should have been limited to nature-of-conduct elements, and the definition of "knowingly" should have been limited to circumstances-surrounding-conduct elements. *See* 482 S.W.3d at 275. Assuming, without deciding, whether it was error, we will determine whether West was harmed by any potential error.

West did not object to this portion of the charge at trial. As such, our review of the purported charge error is the *Almanza* egregious-harm standard. *See* 686 S.W.2d at 171.

As stated earlier, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *See Patrick*, 906 S.W.2d at 492; *see also Arline*, 721 S.W.2d at 351. In addition to these factors, we may also consider the degree, if any, to which the culpable mental states were limited by the application portion of the jury charge when assessing harm. *See Patrick*, 906 S.W.2d at 492; *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook*, 884 S.W.2d at 492. When the application paragraph points the jury to the appropriate portion of the definitions, this mitigates against a finding of egregious harm. *See Patrick*, 906 S.W.2d at 493; *see also Riggs*, 482 S.W.3d at 275.

In the application portion of the charge, "intent" is limited properly to the resulting flight, and" knowledge "is limited properly to the circumstances surrounding the flight. This mitigates against a finding of egregious harm. *See Patrick,* 906 S.W.2d at 493; *Reed v. State,* 421 S.W.3d 24, 30 (Tex. App.–Waco 2013, pet. ref'd).

The evidence from the trial primarily focused on whether the car was a deadly weapon and not the culpable mental states. Accordingly, the state of the evidence does not support a finding of egregious harm.

West's argument briefly mentioned the applicable culpable mental states for evading arrest or detention with a motor vehicle. However, the emphasis of the prosecutor's argument at trial focused on the deadly-weapon special issue. *See, e.g.,*

*Weems v. State*, No. 05-14-01112-CR, 2016 Tex. App. LEXIS 6732, at \*11 (Tex. App.—Dallas June 24, 2016, pet. ref'd) (mem. op., not designated for publication) (finding no egregious harm in harassment case and noting that the State did not emphasize the erroneous charge language in its closing).  Accordingly, this factor does not support a finding of egregious harm.  Neither party has identified any other relevant evidence in the record as a whole.

Based on the foregoing, we conclude that any error in the abstract portion of the charge was not calculated to injure West's rights or deprive him of a fair and impartial trial.  *See Almanza*, 686 S.W.2d at 171; *see also Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121.  We overrule West's first issue.

### The Punishment Charge

In his second issue, West contends that the trial court provided the jury with outdated parole instructions, which contained additional language about eligibility for good-conduct time.  West argues that he was egregiously harmed by this error.

Here, West did not object to the punishment charge; thus, we review error, if any, in the punishment charge for egregious harm. *Olivas*, 202 S.W.3d at 144. We have previously stated the standard of review for charge error.  *See Middleton*, 125 S.W.3d at 453.  As noted earlier, we must first determine if the jury charge contained error.

A jury charge contains error when it does not follow the applicable law.  *See* TEX. CODE CRIM. PRO. ANN. art 36.14; *Taylor v. State* 332 S.W.3d 483, 488-89 (Tex. Crim. App.

2011). As relevant here, the Texas Legislature changed the parole instructions on September 1, 2019. *See* Act of May 16, 2019, 86th Leg., R.S., ch. 260, §§ 2-3, 2019 Tex. Sess. Law Serv. 446, 448. This change removed references to "good conduct time," which the Legislature believed would confuse jurors. *Id*. In the instant case, the trial court's charge included language that has been repealed by the Legislature. Thus, the inclusion was erroneous. *See* TEX. CODE CRIM. PRO. ANN. art 36.14; *see also Jones v. State*, No. 10-19-00350-CR, 2021 Tex. App. LEXIS 7622, at **8-9 (Tex. App.—Waco Sept. 15, 2021) (mem. op., not designated for publication) (concluding that the trial court erred in submitting instructions considering good-conduct-time after the Legislature removed this from the jury charge, but ultimately concluding that the error was harmless because the charge included language to disregard parole law and good-conduct time). The State does concede that the instruction given by the trial court regarding parole was erroneous.

Despite the erroneous instructions regarding parole, specifically, good-time-credit eligibility, we cannot say that West was egregiously harmed. The trial court included the following instruction after the erroneous instruction:

> You may consider the existence of the parole law and good conduct time. *However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which parole law may be applied to this particular defendant.*

(Emphasis added). We presume that the jury followed the trial court's charge instructions. *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). The instruction given by the trial court prevents harm to West by directing the jury not to consider parole

and good-conduct time in their punishment assessment.  *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006); *Newman v. State*, 49 S.W.3d 577, 581 (Tex. App.—Beaumont 2001, pet. ref'd); *see also Jones v. State*, No. 10-19-00350-CR, 2021 Tex. App. LEXIS 7622, at *10.[1]  Further, there is nothing in the record to indicate that the jury was confused by the trial court's charge.

In addition to the foregoing, neither party presented any evidence about parole considerations.  Moreover, the State mentioned parole only once during its jury argument.  Rather, the focus of the State's closing argument was on the nature and circumstances of the offense and the punishment-phase evidence.

Considering all the relevant *Almanza* factors, we cannot say that West was egregiously harmed by the erroneous jury instruction on parole and good-time-credit eligibility.  We overrule West's second issue on appeal.

### Court Costs

In this third issue, West complains that he was erroneously assessed the time-payment fee, a bond fee, and that the remaining fees were improperly based on fees

---

[1] In *Jones*, this court concluded that a substantially similar parole instruction was harmless. *See Jones v. State*, No. 10-19-00350-CR, 2021 Tex. App. LEXIS 7022, at *10. Specifically, the "curative" instruction in Jones stated: "[i]t cannot accurately be predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities. You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant."

prescribed for offenses that were committed on or after January 1, 2020. The State

concedes that $58 should be deleted from the assessed court costs.[2]

THE $10 BOND FEE

Here, West was assessed $372 in court costs. The corresponding certified bill of

costs itemizes the assessed court costs and shows that West was assessed a $10 fee for a

peace officer to "Take/Approve Bond." Under the law applicable to this case, a trial court

may assess a $10 peace officer's fee for taking or approving a bond. *See* Act of May 11,

2009, 81st Leg., R.S. ch. 87, § 6.008, 2009 TEX. GEN. LAWS 208, 231 (amended 2019) (current

version TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(5)). However, it is undisputed that

West remained in jail from the time of his arrest until imposition of sentence. In other

words, West never posted bond. Because "[a]n officer may not impose a cost for a service

not performed or for a service for which a cost is not expressly provided by law," TEX.

CODE CRIM. PROC. ANN. art. 103.002, we modify the judgment of conviction and bill of

costs to delete the $10 bond fee.

THE $15 TIME-PAYMENT FEE

The certified, itemized bill of costs shows that West was also assessed a $15 time-

payment fee. Regarding the time-payment fee, the Court of Criminal Appeals has

recently held that the pendency of an appeal stops the clock for purposes of the time-

---

[2] A defendant may raise an objection to the assessment of court costs for the first time on appeal when the costs are not imposed in open court and the judgment does not contain an itemization of the imposed court costs, as in this case. *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016).

payment fee. *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021). Consequently, the assessment of the time-payment fee in this case is premature and should be struck in its entirety. *See id.* We therefore modify the trial court's judgment of conviction and bill of costs to delete the $15 time-payment fee, without prejudice to a time-payment fee being assessed later "if, more than 30 days after the issuance of the appellate mandate, [appellant] has failed to completely pay any fine, court costs, or restitution that he owes." *Id.*

THE REMAINING COURT COSTS

Regarding the remaining court costs, the certified, itemized bill of costs indicates that West was assessed the following costs:

- $185 State Consolidated Fee (TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1))

- $2 Transaction Fee (TEX. CODE CRIM. PROC. ANN. art. 102.072)

- $40 Clerk's Fee (TEX. LOC. GOV'T CODE ANN. § 134.101)

- $4 Technology Fee (TEX. LOC. GOV'T CODE ANN. § 134.101)

- $1 Jury Fund Fee (TEX. LOC. GOV'T CODE ANN. § 134.101)

- $25 Records Management and Preservation Fee (TEX. LOC. GOV'T CODE ANN. § 134.101)

- $25 Specialty Court Fee (TEX. LOC. GOV'T CODE ANN. § 134.101)

- $10 Courthouse Security Fee (TEX. LOC. GOV'T CODE ANN. § 134.101)

- $50 County Warrant Fee (TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(2))

- $5 Fee for Peace Officer Commitment or Release (TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(6))

The sum of the remaining court costs is $347. West contends that these fees are erroneous because they were assessed based on statutes that were amended and made effective after the date he committed the charged offense. We agree.

In 2019, the Legislature made numerous amendments, repeals, and new laws that modified the way court costs are assessed in criminal cases. The effective date of these changes was January 1, 2020, and the Legislature did not indicate that the changes were to be applied retroactively. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, §§ 5.01, 5.04, 2019 Tex. Gen. Laws 3982, 4035-36. The court costs listed above are based on the 2019 changes. We conclude that these assessments are erroneous because West was convicted of a felony offense that occurred on September 9, 2019.

Based on the law applicable to the case, West should have been assessed the following court costs:

- $40 Jury Fee (Act of May 26, 2015, 84th Leg., R.S., ch. 654, § 2, 2015 Tex. Gen Laws 2094, 2094 (repealed 2019))

- $4 Juror Services Fee (Act of May 27, 2005, 79th Leg., R.S., ch. 1360, § 5, 2005 Tex. Gen. Laws 4257, 4258 (repealed 2019))

- $40 District Clerk Fee (Act of May 27, 1995, 74th Leg., R.S., ch. 764, § 1, 1995 Tex. Gen. Laws 3969, 3969 (repealed 2019))

- $25 Records Management and Preservation Fee (Act of May 28, 2005, 79th Leg., R.S., ch. 804, § 2, 2005 Tex. Gen. Laws 2777, 2777-78 (repealed 2019))

- $50 County Warrant Fee (Act of May 11, 2009, 81st Leg., R.S., ch. 87, § 6.008, 2009 Tex. Gen. Laws 208, 231 (amended 2019))

- $5 Fee for Peace Office Commitment of Release (Act of May 11, 2009, 81st Leg., R.S., ch. 87, § 6.008, 2009 Tex. Gen. Laws 208, 231 (amended 2019))

- $4 Technology Fee (Act of May 31, 2009, 81st Leg., R.S., ch. 1183, § 1, 2009 Tex. Gen. Laws 3751, 3751 (amended 2019))

- $5 Courthouse Security Fee (Act of Apr. 11, 19097, 75th Leg., R.S., ch. 12, § 1, 1997 Tex. Gen. Laws 51, 51 (amended 2019))

- $133 Consolidated Fee (Act of June 2, 2003, 78th Leg., R.S., ch. 209, § 62(a), 2003 Tex. Gen. Laws 979, 996 (amended 2019))

- $6 Judicial Support Fee (Act of May 15, 2007, 80th Leg., R.S., ch. 1301, § 3, 2007 Tex. Gen. Laws 4380, 4380 (repealed 2019))

- $2 Indigent Defense Fee (Act of Sept. 1, 2007, 80th Leg., R.S., ch 1014, § 6, 2007 Tex. Gen. Laws 3546, 3548 (repealed 2019))

The sum of the court costs that should have been assessed is $314. Therefore, based on the foregoing, we modify the trial court's judgment of conviction and bill of costs to reduce the remaining assessed court costs by $33, which constitutes the difference between $347 and $314. In light of the arguments raised, we sustain West's third issue.

## Conclusion

Because we have sustained West's third issue, we modify the trial court's judgment, including the attachment A Order to Withdraw Funds, and correct the bill of costs by reducing the amount therein $58, which is the sum total of the erroneously assessed bond fee, time-payment fee, and the remaining assessed court costs based on

the wrong statutes. We affirm the trial court's judgment as modified and correct the

Clerk's bill of cost accordingly.


MATT JOHNSON
Justice


Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed as modified
Opinion delivered and filed April 13, 2022
Do not publish
[CRPM]

