NUMBER 13-02-218-CR

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG




ALEJANDRO RODRIGUEZ MATA,                                             Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.




On appeal from the 257th District Court of Hidalgo County, Texas.




O P I N I O N

Before Justices Yañez, Rodriguez and Baird



Opinion by Justice Baird

          Appellant was charged by indictment with the offense of murder. The indictment
also alleged a prior felony conviction for the purpose of enhancing the range of
punishment. A jury convicted appellant of the charged offense. Following appellant’s plea
of not true, the jury found the enhancement allegation true and assessed punishment at
ninety-nine years confinement in the Texas Department of Criminal Justice–Institutional
Division, and a fine of $10,000. We affirm the conviction, but reverse and remand for a
new trial on punishment.



I. Self Defense and Defense of Third Person.
          Points of error one, two, and three contend: (a) the trial judge erred in denying
appellant’s requested jury instruction on the defense of a third person; (b) the trial judge
erred in failing to sua sponte instruct the jury on self defense; and (c) defense counsel was
ineffective for failing to request a charge on self defense.
          A person is justified in using non-deadly force against another where he reasonably
believes the force is immediately necessary to protect himself against the other's use or
attempted use of unlawful force. Tex. Pen. Code Ann. §§ 9.31 (Vernon Supp. 2004). A
person is justified in using deadly force against another if: (1) he would be justified in using
non-deadly force; (2) a reasonable person in the actor's situation would not have retreated;
and, (3) he reasonably believes the deadly force is immediately necessary to protect
himself against the other's use or attempted use of unlawful deadly force. Tex. Pen. Code
Ann. § 9.32(a) (Vernon Supp. 2004). Section 9.33 of the penal code “provides, essentially,
that a person is justified in using deadly force to protect a third person when that third
person is threatened by circumstances that would entitle the actor to protect himself, and
the actor reasonably believes his intervention is immediately necessary.” Hamel v. State,
916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Since appellant used deadly force in the
instant case, the issue is whether either appellant or a third person would have been
justified in using such force against the decedent.
          The only fact witness cited in appellant’s brief to support these points of error is
Raymond Dean Sanchez. We need only consider his testimony because a defendant is
entitled to an instruction on any properly requested defensive issue that is raised by the
evidence, even if the evidence is weak, impeached, and not credible. Granger v. State,
3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Conversely, if the evidence, viewed in a
favorable light, does not establish the defensive issue, an instruction is not required. 
Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).
          Sanchez testified the decedent wanted to purchase some cocaine. Sanchez drove
the decedent to the apartment complex where appellant lived, and asked where cocaine
could be located. Appellant’s brother, Leo, got into the vehicle with Sanchez and the
decedent, and drove to a location where cocaine was subsequently purchased. On the
return trip, Leo and the decedent began snorting the cocaine. Upon their arrival, the two
began arguing over whether Leo consumed too much of the decedent’s cocaine. After
exiting the vehicle, the decedent shoved Leo, and a fight ensued. Sanchez attempted to
break up the fight; when his efforts failed, Sanchez went to appellant’s apartment and
sought help separating the fighters. Sanchez testified appellant approached the fighters
and stabbed the decedent with a screwdriver. 
          According to Sanchez, after the initial push by the decedent, Leo got the better of
the decedent and was on top of him during the fight. Leo was still on top of the decedent
when appellant arrived, and Leo never asked appellant for help. Moreover, Sanchez was
steadfast in his testimony that the decedent was unarmed at all times, and that the
decedent did not threaten to kill anyone. 
          For the purpose of our analysis we will assume the initial shove by the decedent
constituted unlawful force, and that Leo was entitled to defend himself against that force. 
However, Sanchez’s testimony is clear that Leo quickly gained the advantage during the
fight, and was on top of the unarmed decedent.


 Consequently, there is no testimony from
Sanchez that a reasonable person in Leo's situation would not have retreated, or that Leo
reasonably believed the deadly force was immediately necessary to protect himself against
the decedent's use or attempted use of unlawful deadly force. Tex. Pen. Code Ann. §
9.32(a) (Vernon Supp. 2004). Therefore, we hold Leo was not justified in using deadly
force to protect himself against the decedent. Consequently, we further hold the evidence
did not raise the issue of defense of a third person because there is no testimony from
which appellant could have reasonably believed his intervention into the fight between Leo
and the decedent was immediately necessary to protect Leo against the decedent's use
or attempted use of unlawful deadly force. Hamel, 916 S.W.2d at 493. Additionally, we
hold appellant was not entitled to an instruction on self defense because there was no
evidence that appellant reasonably believed the force was immediately necessary to
protect himself against the decedent’s use or attempted use of unlawful deadly force, or
that a reasonable person in appellant's situation would not have retreated. Tex. Pen. Code
Ann. § 9.32(a) (Vernon Supp. 2004).
          Consequently, we hold the trial judge did not err in denying appellant’s requested
instruction on the defense of a third person, or in failing to instruct the jury on self defense. 
Furthermore, we hold defense counsel was not ineffective for failing to request a charge
on self defense because counsel cannot be ineffective for not requesting an instruction the
trial court could have properly refused. Rodriguez v. State, 899 S.W.2d 658, 668 (Tex.
Crim. App. 1995). Accordingly, the first, second, and third points of error are overruled.
II. Ineffective Assistance of Counsel.
          Points of error four through eleven contend defense counsel was ineffective at the
trial of the instant case. The right to the effective assistance of counsel is guaranteed to
criminal defendants by the Sixth and Fourteenth Amendments to the United States
Constitution, and Article I, section 10 of the Texas Constitution. The well-known two-prong
standard of Strickland v. Washington, 466 U.S. 668, 684 (1984), is utilized when reviewing
ineffective assistance of counsel claims. The reviewing court must first decide whether trial
counsel's representation fell below an objective standard of reasonableness under
prevailing professional norms. Id. If counsel's performance was deficient, the reviewing
court must decide whether there is a "reasonable probability" the result of the trial would
have been different but for counsel's deficient performance. Id. A reasonable probability
is a "probability sufficient to undermine confidence in the outcome." Id. at 694. Absent
both showings, an appellate court cannot conclude the conviction resulted from a
breakdown in the adversarial process that renders the result unreliable. Id. at 687; Ex
parte Menchaca, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993); Boyd v. State, 811 S.W.2d
105, 109 (Tex. Crim. App. 1991).
          The defendant bears the burden of proving ineffective assistance of counsel by a
preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App.
1998). Allegations of ineffective assistance of counsel will be sustained only if they are
firmly founded and affirmatively demonstrated in the appellate record. McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996). When determining the validity of an
ineffective assistance of counsel claim, any judicial review must be highly deferential to trial
counsel and avoid the deleterious effects of hindsight. Ingham v. State, 679 S.W.2d 503,
509 (Tex. Crim. App. 1984). This deferential review begins with the strong presumption
that counsel's actions and decisions were reasonably professional, and were motivated by
sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Appellant has the burden of rebutting this presumption, and generally the record on direct
appeal will not be sufficient to show that counsel's representation was so deficient and so
lacking in tactical or strategic decision-making as to overcome the presumption that
counsel's conduct was reasonable and professional. Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002); Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)
(trial record generally not sufficient to establish an ineffective assistance of counsel claim). 
There is, however, a recognized exception to this general rule which will be discussed in
relation to the tenth point of error.A. The Guilt Phase.
1.
          The fourth point of error contends defense counsel was ineffective for failing to
secure an adverse ruling following his objection to the State’s argument that Sanchez had
seen appellant with a knife stabbing the decedent as he lay on the ground. Defense
counsel objected, stating the argument was “a mischaracterization of the testimony.” The
trial judge responded by stating: “Use your own recollection, ladies and gentlemen, as to
what the witness has testified to.” 
          We agree with defense counsel that the argument constituted a misstatement of
Sanchez’s testimony. Sanchez categorically stated that he did not see anyone with a knife. 
The State cites Kinnamon v. State, 791 S.W.2d 84, 90 (Tex. Crim. App. 1990), overruled
on other grounds, Cook v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994), for the
proposition that defense counsel may have decided the instruction adequately admonished
the jury. While we do not read Kinnamon as necessarily standing for that proposition, the
State’s argument does prove that we do not know why defense counsel did not continue
objecting until he obtained an adverse ruling. It could well be that counsel thought the
instruction from the trial judge was adequate. Because the record is silent on this issue,
we are left to speculate about counsel’s actions. This we will not do. The fourth point of
error is overruled.
 
 
2.
          The fifth point of error contends defense counsel was ineffective for failing to object
to the State calling a witness for the sole purpose of impeaching her. Our law is clear that
the State may not call a witness solely for the purpose of impeaching that witness with
otherwise inadmissible evidence. Hughes v. State, 4 S.W.3d 1, 7 (Tex. Crim. App. 1999).
          The witness at issue, Adriana Mata, appellant’s sister, was a fact witness who had
previously provided a written statement that she saw appellant stab the decedent. She had
previously testified for the State at Leo’s trial for this same alleged offense. However,
when called as a witness in the instant case, Adriana repeatedly stated that she did not
remember making a statement or seeing the alleged murder. There is no showing the
State called Mata solely for the purpose of impeaching her. Moreover, the information
contained in Adriana’s statement which was subsequently introduced to impeach her was
substantially testified to by other witnesses. Consequently, we hold there was no violation
of the holding in Hughes, supra. Accordingly, the fifth point of error is overruled.
3.
          The sixth point of error contends defense counsel was ineffective for not objecting
to an extraneous offense. Specifically, there was no objection to the testimony of Officer
Adrian Medrano, who testified that he checked the criminal histories of Leo and appellant
when attempting to find an address to locate them. Defense counsel’s failure to object
does not constitute ineffective assistance because the mere suggestion of the possibility
of an extraneous offense is not sufficient to constitute error. Roach v. State, 586 S.W.2d
866, 868 (Tex. Crim. App. 1979), overruled on other grounds, Parker v. State, 985 S.W.2d
460 (Tex. Crim. App. 1999). The fifth point of error is overruled.
4.
          The seventh point of error contends defense counsel was ineffective for “not
objecting to irrelevant/overly prejudicial matters.” This point of error relates to the
testimony of Sonia Garcia, the decedent’s sister, who identified a photograph of the
decedent, and provided some background information. Although not specifically
mentioned in appellant’s brief, we interpret this point of error as arguing that Garcia’s
testimony constituted improper victim impact evidence.
          Clearly, the State is permitted to provide evidence identifying the decedent in a
murder case. This type of testimony constitutes error when presented in an inflammatory
and prejudicial manner. See Stahl v. State, 749 S.W.2d 826, 829-30 (Tex. Crim. App.
1988). However, the instant case is easily distinguishable from Stahl where the prosecutor
deliberately violated an express court order that would have prevented the witness from
testifying, and the court found that the prosecutor's conduct was blatant in that he had
foreknowledge of the witness's likely emotional outburst. Id. at 831. 
          In this case, appellant does not allege, nor does the record suggest, the existence
of prosecutorial misconduct. Further, there was no emotional outburst as in Stahl, but
rather a brief identification of the decedent with some general background information. 
Accordingly, we hold Garcia’s testimony was not prejudicial to appellant. Assuming
arguendo the testimony was prejudicial, the testimony of Garcia pales in comparison to that
in Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002), where the erroneous admission
of such evidence was held to be harmless. See id. at 355. Accordingly, the seventh point
of error is overruled.
 
B. The Punishment Phase.
          The eighth, ninth, tenth, and eleventh points of error concern the good conduct time
and parole instruction included in the punishment charge, and the State’s arguments on
those subjects. 
1. The Erroneous Instruction.
          Appellant was convicted of murder, a first degree felony, for which he is required to
serve one-half of his actual sentence (or thirty years) without regard for any good conduct
time. Luquis v. State, 72 S.W.3d 355, 359 (Tex. Crim. App. 2002). Following such a
conviction, the trial judge is required to instruct the jury as prescribed by the code of
criminal procedure. See Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp.
2004). In its entirety, that instruction reads:
Under the law applicable in this case, the defendant, if sentenced to a term
of imprisonment, may earn time off the period of incarceration imposed
through the award of good conduct time. Prison authorities may award good
conduct time to a prisoner who exhibits good behavior, diligence in carrying
out prison work assignments, and attempts at rehabilitation. If a prisoner
engages in misconduct, prison authorities may also take away all or part of
any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time
served equals one-half of the sentence imposed or 30 years, whichever is
less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole. Eligibility for parole does not
guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time
might be applied to this defendant if he is sentenced to a term of
imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time.
However, you are not to consider the extent to which good conduct time may
be awarded to or forfeited by this particular defendant. You are not to
consider the manner in which the parole law may be applied to this particular
defendant.

See id. (emphasis added).

          However, the trial judge instructed the jury that appellant would not become eligible
for parole “until the actual time served plus any good conduct time earned equals one-half
of the sentence imposed or 30 years, which ever is less, without consideration of any good
conduct time he may earn.” (emphasis added). Because the italicized portion of the
instruction was erroneous, we hold defense counsel was ineffective for failing to object. 
Accordingly, the first prong of Strickland has been established as it relates to the eighth
point of error.
2. The Improper Argument.
          After the reading of the court’s charge, the State elected to make an opening
argument prior to defense counsel. The State began by referring to appellant’s pen
packet, and how a final conviction would affect the range of punishment. The State then
argued:
The other thing that’s important here there is a lot of language
regarding your, you know, that he can get good time credit, that there is such
a thing as parole. That’s to let you know there is parole in Texas. What it is
for the, okay, for you to do is go back and say, Let’s do him. Give him this
because he will get out in this amount of time because you don’t know how
the parole law will be applied today. They can change those laws in two
years from now, but it is to let you know that they do exist and you may
consider the existence of them, the fact that he may at some point be eligible
for parole in considering the amount of time you think is appropriate in this
case.
 
For example, when you look at the pen packet you can see that he
was sentenced and the date he was sentenced. And the date you’ll see it
was a sentence for five years for burglary of a habitation, and possession of
a prohibited weapon, and date of that sentence . . . And after that he was
sent to prison for a period of five years on . . . January of 1998. And so you
know he was sentenced to a period of five years in 1998, and this offense
was committed on January 1st of the year 2001, less than five years later.

          So you know parole does exist in reality.

          And so that will help you understand those issues.

(Emphasis added). Defense counsel then presented her argument which did not mention
good conduct time or parole.
          The State’s argument was improper in several respects. First, the prosecutor stated
a person convicted of murder “can get good time credit.” As discussed in the preceding
section, this argument is a misstatement of the law; a person convicted of murder is
required to serve one-half of his actual sentence (or thirty years) without regard for any
good conduct time. Luquis, 72 S.W.3d at 359. Even if the trial judge had accurately
instructed the jury, this argument would have been improper because the statutory
instruction specifically prohibits the consideration of good conduct time in a particular case:
“[Y]ou are not to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant.” Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).
          Second, the State specifically asked the jury to apply the law of parole to appellant
by stating: “What it is for the, okay, for you to do is go back and say, Let’s do him. Give
him this because he will get out in this amount of time because you don’t know how the
parole law will be applied today,” and asking the jury to consider parole “in considering the
amount of time you think is appropriate in this case.” This argument violates the express
language of the statutory instruction: “You are not to consider the manner in which the
parole law may be applied to this particular defendant.” Id.
          Third, subsection (d) of article 37.07, section 4 provides: “This section does not
permit the introduction of evidence on the operation of parole and good conduct time laws.” 
Id., § 4(d). The State circumvented this mandatory statute by specifically referring the jury
to the pen packet and arguing “And so you know he was sentenced to a period of five
years in 1998, and this offense was committed on January 1st of the year 2001, less than
five years later. So you know parole does exist in reality.” This argument was clearly
improper. Hawkins v. State, 99 S.W.3d 890, 902 (Tex. App.–Corpus Christi 2003, pet.
ref’d).
          Having determined the State’s argument was improper, the question under
Strickland's first prong is whether counsel's failure to object to the improper argument was
deficient conduct. Even where an objection would have been meritorious, the failure to
object may be attributed to sound trial strategy. Strickland, 466 U.S. at 690. A substantial
risk of failure accompanies a claim of ineffective assistance of counsel on direct appeal
because the record is simply underdeveloped and cannot adequately reflect the failings
of trial counsel.


 Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). As a
general rule, claims of ineffective assistance of counsel not developed in the appellate
record will be resolved against the defendant when the appellate court employs Strickland's
presumption that the challenged action of trial counsel was the result of "sound trial
strategy." Strickland, 466 U.S. at 689. However, an exception to the "sound trial strategy"
presumption exists when the record clearly confirms that no reasonable trial counsel would
have engaged in the complained of conduct or omission. Vasquez v. State, 830 S.W.2d
948, 951 (Tex. Crim. App. 1992); Chavez v. State, 6 S.W.3d 66, 71 (Tex. App.--San
Antonio 1999, pet. ref'd); Weeks v. State, 894 S.W.2d 390, 392 (Tex. App.--Dallas 1994,
no pet.). Holding counsel ineffective in light of such a record is not speculation because
the deficient performance is confirmed by the appellate record. Vasquez, 830 S.W.2d at
951; Stone v. State, 17 S.W.3d 348, 350 (Tex. App.–Corpus Christi 2000, pet. ref'd);
Weeks, 894 S.W.2d at 392. When the record establishes that ”the challenged conduct
was so outrageous that no competent attorney would have engaged in it,” the presumption
that counsel's actions and decisions were reasonably professional and were motivated by
sound trial strategy is rebutted. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001). In other words, Strickland does not require deference when there is no conceivable
strategic purpose that would explain counsel's conduct. Lyons v. McCotter, 770 F.2d 529,
534-35 (5th Cir. 1985).
          Obviously, the goal of every defense counsel at the punishment phase of trial is to
have the jury assess the least amount of punishment possible. This was the goal of
defense counsel in the instant case. To achieve this goal, counsel emphasized: (a)
appellant’s relative youth -- twenty-three years of age; (b) the decedent’s lifestyle, which
involved drinking and illicit drug use; and (c) that the decedent’s death was the result of a
fight involving drugs, and not a planned killing.


 Defense counsel asked the jury to
consider the lower end of the range of punishment. 
          In light of this obvious strategy, we hold there could have been no basis for defense
counsel's failure to object to the improper argument of the State. Because the improper
argument could only serve to increase appellant’s sentence, defense counsel’s failure to
object was “so outrageous that no competent attorney would have engaged in it.” Garcia,
57 S.W.3d at 440. For these reasons, we hold the first prong of Strickland has been
established.
          Under the second prong, appellant must demonstrate that he was prejudiced by the
deficient performance. Stated another way, the second prong is met if defense counsel's
deficient performance creates a probability sufficient to undermine confidence in the
outcome. Strickland, 466 U.S. at 694. In the instant case, the jury assessed the maximum
punishment -- 99 years confinement and a fine of $10,000.00. While the decedent’s death
was tragic and senseless, as are all murders, we do not find that the circumstances of the
instant offense, in light of the decedent’s illicit drug use and unlawful attack on Leo, to be
especially heinous. The jury certainly could have believed the crime warranted the
maximum sentence. On the other hand, we must accept the probability that the jury
accepted the State’s improper invitation to “go back and say, Let’s do him.” Consequently,
our confidence in the punishment verdict is undermined by defense counsel's deficient
performance. Therefore, we hold the second prong of Strickland has been met. 
Accordingly, the tenth point of error is sustained.
          Additionally, we further hold the cumulative effect of the tenth point of error and the
deficient conduct in the eighth point of error – failing to object to the erroneous good
conduct time instruction – amounted to a denial of effective assistance of counsel at the
punishment phase of appellant’s trial. Wright v. State, 28 S.W.3d 526, 537 (Tex. Crim.
App. 2000); Chamberlain v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). For this
additional reason, we sustain the tenth point of error.
          In light of this conclusion, we need not more fully address the eighth, ninth, and
eleventh points of error. See Tex. R. App. P. 47.1. Further, we need not address the
remaining points of error: numbers twelve, thirteen and fourteen. See id. 
          The trial court’s judgment of conviction is affirmed. However, because we sustain
the tenth point of error, the judgment of the trial court is reversed as it relates to the
sentence. This case is remanded to the trial court for a new trial on the issue of
punishment. Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2004).
                                                               
_________________________
                                                                                      CHARLES BAIRD,
                                                                                      Justice
Publish.
Tex. R. App. P. 47.2(b).
Opinion delivered and filed
this 12th day of August, 2004.