

# NUMBER 13-02-00218-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ALEJANDRO RODRIGUEZ MATA,**                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

**On appeal from the 275th District Court of Hidalgo County, Texas.**

---

# OPINION ON REMAND

### Before Justices Yañez, Rodriguez, and Wittig[1]
### Opinion on remand by Justice Wittig

On direct appeal, this Court reversed and remanded for a new trial on the issue of punishment; however, the court of criminal appeals reversed our decision and remanded the case to this Court for consideration of appellant's remaining issues. *Mata v. State*, 141 S.W.3d 858  (Tex. App.–Corpus Christi, 2004), *rev'd*, 226 S.W.3d 425, 433 (Tex. Crim.

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code.  *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon  2005).

App. 2007). Issues one through seven and ten have already been adressed in our prior opinion. *See generally Mata*, 141 S.W.3d at 426-33. We now address the remaining issues.

Ineffective Counsel

In his eighth and ninth issues, appellant argues that his trial counsel was ineffective for not objecting to the punishment charge because it violated the government code and the due process clause. In his eleventh issue, he charges counsel was ineffective for not objecting to the State's argument to consider parole eligibility in imposing a sentence.

Review of an ineffective assistance of counsel claim is conducted under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hernandez v. State,* 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The first requirement under *Strickland* states: "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The second requirement sets out the general requirement that the defendant affirmatively prove prejudice, *i.e.*, that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

In his eighth and ninth issues, appellant argues counsel was ineffective for not objecting to the punishment charge. We address the allegations of error concerning the charge itself in issue twelve below.

In the charge, the trial court inserted superfluous language. The charge stated:

> Under the law applicable in this case, the Defendant, if sentenced to a term
> of imprisonment, he will not become eligible for parole until the actual time
> served plus any good conduct time earned equals one-half of the sentence
> imposed, or 30 years, whichever is less, without consideration of any good

conduct time he may earn.

The court's charge included the following additional, non-statutory language: "plus any good conduct time earned." However, the charge also instructed the jury not to consider the manner in which the parole law might be applied to the defendant and was otherwise substantially correct. We also observe there was no evidence the jury was confused about the instructions in the charge.

Even if we were to assume error, the record is silent as to why counsel did not object. When the record is silent as to defense counsel's rationale or strategy, appellant fails to overcome the presumption that trial counsel's decision was reasonable. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *see Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d 813-14; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *see also Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex. Crim. App. 1980). "Experience has taught us that in most instances a reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim." *Thompson*, 9 S.W.3d at 813-14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Mallett,* 65 S.W.3d at 63. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.2d at 813 (citing *McFarland*

3

*v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

The record shows that appellant presented no evidence that overcomes the presumption that trial counsel's decision not to object was reasonable. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.2d at 813. We overrule appellant's eighth and ninth issues.

In his eleventh issue, appellant charges counsel was ineffective for not objecting to the State's argument to consider parole eligibility in imposing a sentence because it violated due process. He cites *Miller v. State*, 741 S.W.2d 382, 391 (Tex. Crim. App. 1987) (stating that an exception to the general rule requiring an objection to preserve error, is that improper argument may present a Fourteenth Amendment due process claim if the prosecutor's argument so infected the trial with unfairness as to make the resulting conviction a denial of due process). Appellant made virtually the same ineffective assistance argument in his tenth issue, contending there that the charge violated the Texas Code of Criminal Procedure rather than due process. The Texas Court of Criminal Appeals has already addressed this parallel issue in part. It held:

> First, on our review of the record, the prosecutor's statement to the jury that a person convicted of murder "can get good time credit" is not so clearly a misstatement of the law as the Court of Appeals claimed. A defendant convicted of murder is neither more nor less eligible to receive good conduct time credit during his or her sentence. The only criteria for determining an inmate's eligibility to receive good time are his classification by the Texas Department of Criminal Justice and his conduct while incarcerated. The statutory instruction at issue here serves only to inform the jury of the limitations imposed upon the convicted person's ability to have his or her accrued good conduct time considered by a parole board in determining whether he should be eligible for release. It explicitly states that, whatever good conduct time the defendant may receive during his incarceration, no amount of good conduct time accrued will be calculated as part of his time served until he has served a sufficient amount of actual time. It also informs the jury that such decisions are exclusively the province of the prison and parole board. Thus, it was not a misstatement of law for the State

> to tell the jury that the appellant could "get good time credit," even if the State omitted the statutory condition under which his good time credit could be considered by a parole board.

*Mata*, 226 S.W.3d at 431.

In reversing our prior opinion, on this related issue, the court of criminal appeals held that, although we had found there to be no conceivable reason for trial counsel to have failed to object to the State's improper argument, the fact remained that the appellate record was silent as to why trial counsel failed to so object. "Therefore, the appellant has failed to rebut the presumption that trial counsel's decision was in some way — be it conceivable or not — reasonable." *Id.*

Appellant also argues that the State clearly referred to the pen packet during the punishment phase during its argument. However, the State's intention in doing so was just as likely for the proper purpose of informing the jury that parole and good conduct time do exist in Texas. *Id.* at 432. The existence of such laws may be considered as part of assessing punishment even if the operation of those laws may not. *Id.* "The appellant's pen packet was merely a simple and available example for the jury to understand that parole laws apply to all incarcerated persons, including the appellant." *Id.* The record demonstrates that the appellant's pen packet was not introduced as "evidence on the operation of parole and good conduct laws," as prohibited by the statute. *Id.* Rather, the pen packet had been introduced into evidence during the punishment phase to prove the alleged enhancing factors of the appellant's prior crimes. *Id.* "At the very least, it is not clear that the State's reference to the appellant's pen packet in this instance necessitated an objection by appellant's trial counsel." *Id.* at 433.

5

Because the law of the case has already disposed of the underpinnings of appellant's due process claims, appellant's due process argument must fail. *See Howlett v. State*, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999) (stating that an appellate court's resolution of a question in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal). In any event, we hold that appellant presented no evidence in the record that overcomes the presumption that trial counsel's decision not to object was reasonable. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.2d at 813; *Mata* 226 S.W.3d at 433. We overrule appellant's eleventh issue.

Jury Charge

By his twelfth issue, appellant charges that the trial court erred in failing to submit the law applicable to the case to the jury. The Texas Code of Criminal Procedure provides that in a specified felony case, the court "shall" charge the jury (inter alia) that:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.

*See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon 2006). The actual charge given stated:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served **plus any good conduct time earned** equals one-half of the sentence imposed, or 30 years, whichever is less, without consideration of any good conduct time he may earn.

(Emphasis added). The trial court properly instructed the other four paragraphs under section 4(a). *Id.*

Appellant cites *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (stating

6

that a statutorily defined word or phrase must be included in the charge as part of the "law applicable to the case"), and argues that the trial court sua sponte must submit the correct law applicable. We agree. However, in *Huizar,* the trial court failed to instruct that extraneous offenses need be proved beyond a reasonable doubt. *Id.* Further, *Huizar* held that such error was purely "charge error" under article 36.19 and did not implicate constitutional rights. *Id.* Rather, the rule in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g), is applied in the harm analysis. *Huizar* is distinguishable because here, the trial court did give the statutorily required language. *See Huizar*, 12 S.W.3d at 483 (noting that disregard of a statutory provision referenced in article 36.19 is the type of omission that does not require a timely request or objection by a party).

Appellant also cites *Luquis v. State*, 72 S.W.3d 355, 366-67 (Tex. Crim. App. 2002), which holds that the court will not find federal constitutional error unless it concludes that a reasonable jury probably was actually confused by this charge or that there was a reasonable probability that it did mislead the jury. *Id.* Appellant argues that the court's instruction was a plain misstatement of the law. According to appellant, the error was exacerbated because of the final argument of the State.

The State counters that the addition of this superfluous phrase was isolated clerical error that does not require reversal, citing *Lozano v. State*, 676 S.W.2d 433, 436-37 (Tex. App.–San Antonio, 1984, no pet.) (providing that an inadvertent or clerical error in an instruction does not require reversal of a conviction where the charge as a whole correctly applies the law to the facts).

The instruction and sentence in question was designed to provide the jury with some

background instruction about parole. The same segment of the charge also specifically warned the jury not to attempt to calculate good time credit and parole law. Because the jury was also instructed not to apply any good time, the extraneous phrase did not affect the overall meaning of the parole instruction. Unlike *Huizar*, the trial court did not completely fail to instruct the jury about the burden of proof concerning extraneous offenses. *Huizar*, 12 S.W.3d at 484.

Under *Almanza*, omission of an unrequested jury instruction applicable to the case calls for a new trial only when the defendant was greatly disadvantaged. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). This degree of harm, sufficiently serious to be called "egregious," is present whenever a reviewing court finds that the case for conviction or punishment was actually made clearly and significantly more persuasive by the error. *Id.*

The function of the jury charge is to instruct the jury on applying the law to the facts. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "[A]n erroneous or an incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact-finding function." *Id.* "An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." *Id.* Instead, article 36.19 of the Texas Code of Criminal Procedure outlines the path this Court should follow to review error in the charge: "[F]irst, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731-32. Where the error is urged for the first time on appeal, a reviewing court will search for "egregious harm." *Almanza*, 686

8

S.W.2d at 171. "Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive." *Blumenstetter v. State*, 135 S.W.3d 234, 240 (Tex. App.–Texarkana 2004, no pet.). The degree of harm demonstrated by the appellant must be actual, not merely theoretical. *Almanza*, 686 S.W.2d at 174; *Taylor v. State*, 146 S.W.3d 801, 804 (Tex. App.–Texarkana 2004, pet. ref d).

In *Newman*, our sister court addressed a similar situation. There, the crucial difference between the statutory charge and that provided to the jury resulted in the jury being incorrectly informed that good conduct time would be considered in calculating the one-half of the sentence Newman would be required to serve before being eligible for parole. *Newman v. State*, 49 S.W.3d 577, 581 (Tex. App.–Beaumont 2001, pet ref'd). As in *Newman*, appellant did not object to the charge, and thus, we may reverse the judgment only if the harm was so egregious that the accused did not have a fair and impartial trial. *Almanza,* 686 S.W.2d at 171. "The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

We conclude there is no egregious harm for several reasons: 1) the charge instructed the jury not to consider the manner in which the parole law might be applied to the defendant; 2) there was no evidence the jury was confused about the instructions in the charge; 3) no motion for new trial was filed; 4) nothing in the record suggests the jury

9

discussed, considered, or tried to apply good conduct time or the parole law in assessing punishment; 5) there was substantial evidence of guilt; and 6) the jury assessed punishment at less than the maximum sentence. *See id.* "[T]he instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Appellant likewise has not shown there is a "reasonable likelihood" that the jury applied the superfluous instruction in a way violative of the constitution. *Id.* Accordingly, we overrule this issue.

Reporter's Record

In his thirteenth issue, appellant maintains he is entitled to a new trial because part of the reporter's record is lost. Appellant requested the reporter's record for "events" of September 24, October 15, and November 6, 2001. No such records were produced, and thus appellant argues the records are "missing." Because of these complaints, we abated this appeal and remanded to the trial court to determine the status of the record.

At the hearing, the court reporter testified she had no notes or transcript pertaining to this case for September 24, October 15, or November 6, 2001. The trial court found in his May 20, 2003, order that "the current appellate record contains all proceedings which had occurred on the record during this case." The docket entry of September 24 simply indicated the case was reset for trial to October 15, 2001. The October 15 docket entry indicated a hearing in which both sides announced ready and a motion to withdraw was heard and denied. Also, the case was reset for trial November 15, 2001.

The evidence does not indicate anything occurred on the record at the October 15th hearing, i.e., the reporter took no notes at the hearing. The docket entries for November

10

6, 2001, indicated both sides appeared and the case was reset for trial December 3, 2001. Jury selection was set for 9 a.m. that day.

On October 31, 2001, the State filed a Motion for Leave of Court to Amend Indictment, seeking to change the last name of the victim from Munoz to Muniz. The proposed order accompanying the motion is unsigned. The indictment itself is not amended. The State submitted that it never urged its motion to amend.

The trial court concluded the reporter's record on file is complete. It also concluded that, even assuming other proceedings occurred on the pertinent dates, no such materials would be necessary for the resolution of the appeal.

Appellant contends that the missing record of October 15, 2001, prohibits him from showing the trial court erred by not allowing defense counsel to withdraw and that he was denied the right to effective assistance of counsel. The written motion to withdraw stated appellant no longer wished counsel to represent him and wished to seek advice and representation of other counsel. The motion was not reurged after its denial.

An appellant seeking to reverse a conviction on the basis of an incomplete record must show: (1) that a significant portion of the record was lost or destroyed, (2) through no fault of her own, (3) that the missing portion of the record is necessary to her appeal, and (4) the parties cannot agree on the record. *Routier v. State*, 112 S.W.3d 554, 571 (Tex. Crim. App. 2003); *see* TEX. R. APP. P. 34.6(f). As a threshold matter, the trial court in its fact-finding capacity found that the "current appellate record contains all proceedings which had occurred on the record . . . ." Appellant's trial counsel testified she thought her motion to withdraw was presented in open court. She stated the basis of the motion was

11

that she could not communicate with her client. "We were not on the same level as far as the presentation of the case." In response to a leading question, she indicated the motion was heard on the record. Yet, in answer to the next question, defense counsel stated: "It was on the record, I'd assume." Defense counsel also had no recollection of the State's motion to amend the indictment. The court reporter testified there was no record taken. Although defense counsel said she assumed there was a record made, she could not recall other factors now asserted by appellant concerning the motion to amend the indictment.

In *Amezquita*, the court of criminal appeals reiterated the observation that "[v]irtually every fact finding involves a credibility determination" and that it has repeatedly recognized that the fact finder is the exclusive judge of the credibility of the witnesses. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (citing *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996)). In this case, the appellate record clearly supports and confirms the trial court's findings of fact. Because the trial court's findings are supported by the record, we accept them as correct. *Ex parte Kimes*, 872 S.W.2d 700, 701 (Tex. Crim. App. 1993). Accepting the findings as true, we can only conclude that a significant portion of the record was not lost or destroyed. We overrule this issue.

## Juror Lopez

In his fourteenth issue, appellant argues his trial counsel was ineffective because she did not challenge juror Lopez for cause. During general voir dire, the venire was asked if they would expect or want to hear from Mata, as for instance, a parent might want to hear from his or her children when one child says that the other child hit him first. In other

12

words, in order to make a fair decision, do you need to hear from that person? Several jurors, including Lopez, responded in the affirmative. At the later bench conference, Lopez was informed that the law says if appellant did not testify, "that you can [not] hold that against him." Lopez replied she could follow the instruction of the court. This was reconfirmed that Mata did not have to testify and the juror would not hold it against him. Lopez said:

> Yes, I think so. Only reason I said that was that how one witness or friend, say friends are there time, place and they would–one way would say it one way and one would say it the other one. And if I was to prove something that I didn't do I think I would want people to hear. That's what I meant, hear from me. Not that getting the stories mixed up.

When asked if the appellant should take the stand and testify if he did not do anything wrong, Lopez responded "No."

Appellant argues that when a prospective juror is shown to be biased as a matter of law, she must be excused when challenged, citing *Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982) ( when a prospective juror is shown to be biased as a matter of law, he must be excused when challenged, even if he states that he can set his bias aside and provide a fair trial). *Anderson* also informs us that bias exists as a matter of law when a prospective juror admits that he is biased for or against a defendant. *Id.* The State argues, and we agree, that Lopez was not shown to be biased and therefore could not have properly been successfully challenged for cause.

Lopez initially indicated in response to a vague and rambling hypothetical, that she would like to hear from the defendant. She explained that if friends were in a disagreement, she would like them to hear from her. She also stated she could follow the

court's instruction and would not require the defendant to testify. The State cites a similar case of initial confusion by a juror, *Barefoot v. State*, 596 S.W.2d 875, 883 (Tex. Crim. App. 1980). In that case, it was obvious that the juror was initially confused as to the relationship between appellant's right to remain silent and his right to effective assistance of counsel. *Id.* Subsequent questioning by both the prosecuting attorney and defense counsel made it clear that the juror did not expect appellant to testify or present other evidence, but only that his attorneys would do their best on his behalf. *Id.* In *Barefoot*, the trial court did not err by overruling the challenge for cause. *Id.* Similarly, a hypothetical objection by defense counsel would not have produced error had the trial court overruled a challenge for cause. *See id.*

Because appellant does not demonstrate that trial defense counsel's performance fell outside the boundaries of reasonable professional assistance, he fails to meet the first prong of *Strickland. See Strickland*, 466 U.S. at 687-88; *Hernandez,* 988 S.W.2d at 770. Furthermore, because the record is silent as to why counsel did not object, appellant fails to overcome the presumption that trial counsel's decision was reasonable. *Rylander*, 101 S.W.3d at 110. We overrule this issue.

The judgment of the trial court is affirmed.


DON WITTIG,
Justice


Do not publish.
TEX.R.APP.P. 47.2(b)
Opinion on remand delivered and
filed this the 22nd day of May, 2008.