NUMBER 13-02-00218-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ALEJANDRO RODRIGUEZ MATA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 275th District Court of Hidalgo County, Texas.

 


OPINION ON REMAND 


Before Justices Yañez, Rodriguez, and Wittig (1)


Opinion on remand by Justice Wittig


 

 On direct appeal, this Court reversed and remanded for a new trial on the issue of
punishment; however, the court of criminal appeals reversed our decision and remanded
the case to this Court for consideration of appellant's remaining issues. Mata v. State, 141
S.W.3d 858 (Tex. App.-Corpus Christi, 2004), rev'd, 226 S.W.3d 425, 433 (Tex. Crim.
App. 2007). Issues one through seven and ten have already been adressed in our prior
opinion. See generally Mata, 141 S.W.3d at 426-33. We now address the remaining
issues. 

 Ineffective Counsel

 In his eighth and ninth issues, appellant argues that his trial counsel was ineffective
for not objecting to the punishment charge because it violated the government code and 
the due process clause. In his eleventh issue, he charges counsel was ineffective for not
objecting to the State's argument to consider parole eligibility in imposing a sentence.

 Review of an ineffective assistance of counsel claim is conducted under the
standard enunciated in Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Hernandez
v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The first requirement under
Strickland states: "When a convicted defendant complains of the ineffectiveness of
counsel's assistance, the defendant must show that counsel's representation fell below an
objective standard of reasonableness." Strickland, 466 U.S. at 687-88. The second
requirement sets out the general requirement that the defendant affirmatively prove
prejudice, i.e., that there is a reasonable probability that, but for counsel's errors, the result
of the proceeding would have been different. Id. at 694. 

 In his eighth and ninth issues, appellant argues counsel was ineffective for not
objecting to the punishment charge. We address the allegations of error concerning the
charge itself in issue twelve below. 

 In the charge, the trial court inserted superfluous language. The charge stated:


 Under the law applicable in this case, the Defendant, if sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time
served plus any good conduct time earned equals one-half of the sentence
imposed, or 30 years, whichever is less, without consideration of any good
conduct time he may earn.


The court's charge included the following additional, non-statutory language: "plus any
good conduct time earned." However, the charge also instructed the jury not to consider
the manner in which the parole law might be applied to the defendant and was otherwise
substantially correct. We also observe there was no evidence the jury was confused about
the instructions in the charge. 

 Even if we were to assume error, the record is silent as to why counsel did not
object. When the record is silent as to defense counsel's rationale or strategy, appellant
fails to overcome the presumption that trial counsel's decision was reasonable. Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); Thompson v. State, 9 S.W.3d 808,
814 (Tex. Crim. App. 1999); see Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005). Review of counsel's representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel's conduct fell within a wide range of reasonable
representation. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Thompson, 9
S.W.3d 813-14; Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); see also
Ex parte Duffy, 607 S.W.2d 507, 513 (Tex. Crim. App. 1980). "Experience has taught us
that in most instances a reviewing court will rarely be in a position on direct appeal to fairly
evaluate the merits of an ineffective assistance claim." Thompson, 9 S.W.3d at 813-14. 
"In the majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel's actions." Mallett, 65 S.W.3d at 63. To
overcome the presumption of reasonable professional assistance, "any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness." Thompson, 9 S.W.2d at 813 (citing McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

 The record shows that appellant presented no evidence that overcomes the
presumption that trial counsel's decision not to object was reasonable. Mallett, 65 S.W.3d
at 63; Thompson, 9 S.W.2d at 813. We overrule appellant's eighth and ninth issues. 

 In his eleventh issue, appellant charges counsel was ineffective for not objecting to
the State's argument to consider parole eligibility in imposing a sentence because it
violated due process. He cites Miller v. State, 741 S.W.2d 382, 391 (Tex. Crim. App. 1987)
(stating that an exception to the general rule requiring an objection to preserve error, is that
improper argument may present a Fourteenth Amendment due process claim if the
prosecutor's argument so infected the trial with unfairness as to make the resulting
conviction a denial of due process). Appellant made virtually the same ineffective
assistance argument in his tenth issue, contending there that the charge violated the Texas
Code of Criminal Procedure rather than due process. The Texas Court of Criminal
Appeals has already addressed this parallel issue in part. It held: 

 First, on our review of the record, the prosecutor's statement to the
jury that a person convicted of murder "can get good time credit" is not so
clearly a misstatement of the law as the Court of Appeals claimed. A
defendant convicted of murder is neither more nor less eligible to receive
good conduct time credit during his or her sentence. The only criteria for
determining an inmate's eligibility to receive good time are his classification
by the Texas Department of Criminal Justice and his conduct while
incarcerated. The statutory instruction at issue here serves only to inform
the jury of the limitations imposed upon the convicted person's ability to have
his or her accrued good conduct time considered by a parole board in
determining whether he should be eligible for release. It explicitly states that,
whatever good conduct time the defendant may receive during his
incarceration, no amount of good conduct time accrued will be calculated as
part of his time served until he has served a sufficient amount of actual time.
It also informs the jury that such decisions are exclusively the province of the
prison and parole board. Thus, it was not a misstatement of law for the State 
to tell the jury that the appellant could "get good time credit," even if the State
omitted the statutory condition under which his good time credit could be
considered by a parole board.


Mata, 226 S.W.3d at 431.

 In reversing our prior opinion, on this related issue, the court of criminal appeals
held that, although we had found there to be no conceivable reason for trial counsel to
have failed to object to the State's improper argument, the fact remained that the appellate
record was silent as to why trial counsel failed to so object. "Therefore, the appellant has
failed to rebut the presumption that trial counsel's decision was in some way -- be it
conceivable or not -- reasonable." Id. 

 Appellant also argues that the State clearly referred to the pen packet during the
punishment phase during its argument. However, the State's intention in doing so was just
as likely for the proper purpose of informing the jury that parole and good conduct time do
exist in Texas. Id. at 432. The existence of such laws may be considered as part of
assessing punishment even if the operation of those laws may not. Id. "The appellant's
pen packet was merely a simple and available example for the jury to understand that
parole laws apply to all incarcerated persons, including the appellant." Id. The record
demonstrates that the appellant's pen packet was not introduced as "evidence on the
operation of parole and good conduct laws," as prohibited by the statute. Id. Rather, the
pen packet had been introduced into evidence during the punishment phase to prove the
alleged enhancing factors of the appellant's prior crimes. Id. "At the very least, it is not
clear that the State's reference to the appellant's pen packet in this instance necessitated
an objection by appellant's trial counsel." Id. at 433.

 Because the law of the case has already disposed of the underpinnings of
appellant's due process claims, appellant's due process argument must fail. See Howlett
v. State, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999) (stating that an appellate court's
resolution of a question in a previous appeal of the same case will govern the disposition
of the same issue when raised in a subsequent appeal). In any event, we hold that
appellant presented no evidence in the record that overcomes the presumption that trial
counsel's decision not to object was reasonable. Mallett, 65 S.W.3d at 63; Thompson, 9
S.W.2d at 813; Mata 226 S.W.3d at 433. We overrule appellant's eleventh issue.

 Jury Charge

 By his twelfth issue, appellant charges that the trial court erred in failing to submit
the law applicable to the case to the jury. The Texas Code of Criminal Procedure provides
that in a specified felony case, the court "shall" charge the jury (inter alia) that: 

 Under the law applicable in this case, if the defendant is sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time
served equals one-half of the sentence imposed or 30 years, whichever is
less, without consideration of any good conduct time he may earn.


See Tex. Code Crim. Proc. Ann. art. 37.07 § 4(a) (Vernon 2006). The actual charge
given stated: 

 Under the law applicable in this case, the Defendant, if sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time
served plus any good conduct time earned equals one-half of the
sentence imposed, or 30 years, whichever is less, without consideration of
any good conduct time he may earn.


(Emphasis added). The trial court properly instructed the other four paragraphs under
section 4(a). Id. 

 Appellant cites Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (stating
that a statutorily defined word or phrase must be included in the charge as part of the "law
applicable to the case"), and argues that the trial court sua sponte must submit the correct
law applicable. We agree. However, in Huizar, the trial court failed to instruct that
extraneous offenses need be proved beyond a reasonable doubt. Id. Further, Huizar held
that such error was purely "charge error" under article 36.19 and did not implicate
constitutional rights. Id. Rather, the rule in Almanza v. State, 686 S.W.2d 157 (Tex. Crim.
App. 1985) (op. on reh'g), is applied in the harm analysis. Huizar is distinguishable
because here, the trial court did give the statutorily required language. See Huizar, 12
S.W.3d at 483 (noting that disregard of a statutory provision referenced in article 36.19 is
the type of omission that does not require a timely request or objection by a party).

 Appellant also cites Luquis v. State, 72 S.W.3d 355, 366-67 (Tex. Crim. App. 2002),
which holds that the court will not find federal constitutional error unless it concludes that
a reasonable jury probably was actually confused by this charge or that there was a
reasonable probability that it did mislead the jury. Id. Appellant argues that the court's
instruction was a plain misstatement of the law. According to appellant, the error was
exacerbated because of the final argument of the State.

 The State counters that the addition of this superfluous phrase was isolated clerical
error that does not require reversal, citing Lozano v. State, 676 S.W.2d 433, 436-37 (Tex.
App.-San Antonio, 1984, no pet.) (providing that an inadvertent or clerical error in an
instruction does not require reversal of a conviction where the charge as a whole correctly
applies the law to the facts). 

 The instruction and sentence in question was designed to provide the jury with some
background instruction about parole. The same segment of the charge also specifically
warned the jury not to attempt to calculate good time credit and parole law. Because the
jury was also instructed not to apply any good time, the extraneous phrase did not affect
the overall meaning of the parole instruction. Unlike Huizar, the trial court did not
completely fail to instruct the jury about the burden of proof concerning extraneous
offenses. Huizar, 12 S.W.3d at 484. 

 Under Almanza, omission of an unrequested jury instruction applicable to the case
calls for a new trial only when the defendant was greatly disadvantaged. Saunders v.
State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). This degree of harm, sufficiently
serious to be called "egregious," is present whenever a reviewing court finds that the case
for conviction or punishment was actually made clearly and significantly more persuasive
by the error. Id. 

 The function of the jury charge is to instruct the jury on applying the law to the facts.
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "[A]n erroneous or an
incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to
properly guide the jury in its fact-finding function." Id. "An erroneous or incomplete jury
charge, however, does not result in automatic reversal of a conviction." Id. Instead, article
36.19 of the Texas Code of Criminal Procedure outlines the path this Court should follow
to review error in the charge: "[F]irst, the court must determine whether error actually
exists in the charge, and second, the court must determine whether sufficient harm
resulted from the error to require reversal." Id. at 731-32. Where the error is urged for the
first time on appeal, a reviewing court will search for "egregious harm." Almanza, 686
S.W.2d at 171. "Egregious harm consists of errors affecting the very basis of the case or
that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the
case for conviction or punishment clearly and significantly more persuasive." 
Blumenstetter v. State, 135 S.W.3d 234, 240 (Tex. App.-Texarkana 2004, no pet.). The
degree of harm demonstrated by the appellant must be actual, not merely theoretical.
Almanza, 686 S.W.2d at 174; Taylor v. State, 146 S.W.3d 801, 804 (Tex. App.-Texarkana
2004, pet. ref d).

 In Newman, our sister court addressed a similar situation. There, the crucial
difference between the statutory charge and that provided to the jury resulted in the jury
being incorrectly informed that good conduct time would be considered in calculating the
one-half of the sentence Newman would be required to serve before being eligible for
parole. Newman v. State, 49 S.W.3d 577, 581 (Tex. App.-Beaumont 2001, pet ref'd). As
in Newman, appellant did not object to the charge, and thus, we may reverse the judgment
only if the harm was so egregious that the accused did not have a fair and impartial trial.
Almanza, 686 S.W.2d at 171. "The actual degree of harm must be assayed in light of the
entire jury charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole." Id.

 We conclude there is no egregious harm for several reasons: 1) the charge
instructed the jury not to consider the manner in which the parole law might be applied to
the defendant; 2) there was no evidence the jury was confused about the instructions in
the charge; 3) no motion for new trial was filed; 4) nothing in the record suggests the jury
discussed, considered, or tried to apply good conduct time or the parole law in assessing
punishment; 5) there was substantial evidence of guilt; and 6) the jury assessed
punishment at less than the maximum sentence. See id. "[T]he instruction may not be
judged in artificial isolation, but must be considered in the context of the instructions as a
whole and the trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991). Appellant likewise
has not shown there is a "reasonable likelihood" that the jury applied the superfluous
instruction in a way violative of the constitution. Id. Accordingly, we overrule this issue.

 Reporter's Record

 In his thirteenth issue, appellant maintains he is entitled to a new trial because part
of the reporter's record is lost. Appellant requested the reporter's record for "events" of
September 24, October 15, and November 6, 2001. No such records were produced, and
thus appellant argues the records are "missing." Because of these complaints, we abated
this appeal and remanded to the trial court to determine the status of the record. 

 At the hearing, the court reporter testified she had no notes or transcript pertaining
to this case for September 24, October 15, or November 6, 2001. The trial court found
in his May 20, 2003, order that "the current appellate record contains all proceedings which
had occurred on the record during this case." The docket entry of September 24 simply
indicated the case was reset for trial to October 15, 2001. The October 15 docket entry
indicated a hearing in which both sides announced ready and a motion to withdraw was
heard and denied. Also, the case was reset for trial November 15, 2001.

 The evidence does not indicate anything occurred on the record at the October 15th
hearing, i.e., the reporter took no notes at the hearing. The docket entries for November
6, 2001, indicated both sides appeared and the case was reset for trial December 3, 2001. 
Jury selection was set for 9 a.m. that day.

 On October 31, 2001, the State filed a Motion for Leave of Court to Amend
Indictment, seeking to change the last name of the victim from Munoz to Muniz. The
proposed order accompanying the motion is unsigned. The indictment itself is not
amended. The State submitted that it never urged its motion to amend.

 The trial court concluded the reporter's record on file is complete. It also concluded
that, even assuming other proceedings occurred on the pertinent dates, no such materials
would be necessary for the resolution of the appeal.

 Appellant contends that the missing record of October 15, 2001, prohibits him from
showing the trial court erred by not allowing defense counsel to withdraw and that he was
denied the right to effective assistance of counsel. The written motion to withdraw stated
appellant no longer wished counsel to represent him and wished to seek advice and
representation of other counsel. The motion was not reurged after its denial.

 An appellant seeking to reverse a conviction on the basis of an incomplete record
must show: (1) that a significant portion of the record was lost or destroyed, (2) through
no fault of her own, (3) that the missing portion of the record is necessary to her appeal,
and (4) the parties cannot agree on the record. Routier v. State, 112 S.W.3d 554, 571
(Tex. Crim. App. 2003); see Tex. R. App. P. 34.6(f). As a threshold matter, the trial court
in its fact-finding capacity found that the "current appellate record contains all proceedings
which had occurred on the record . . . ." Appellant's trial counsel testified she thought her
motion to withdraw was presented in open court. She stated the basis of the motion was
that she could not communicate with her client. "We were not on the same level as far as
the presentation of the case." In response to a leading question, she indicated the motion
was heard on the record. Yet, in answer to the next question, defense counsel stated: "It
was on the record, I'd assume." Defense counsel also had no recollection of the State's
motion to amend the indictment. The court reporter testified there was no record taken. 
Although defense counsel said she assumed there was a record made, she could not
recall other factors now asserted by appellant concerning the motion to amend the
indictment.

 In Amezquita, the court of criminal appeals reiterated the observation that "[v]irtually
every fact finding involves a credibility determination" and that it has repeatedly recognized
that the fact finder is the exclusive judge of the credibility of the witnesses. Ex parte
Amezquita, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (citing Ex parte Mowbray, 943
S.W.2d 461, 465 (Tex. Crim. App. 1996)). In this case, the appellate record clearly
supports and confirms the trial court's findings of fact. Because the trial court's findings
are supported by the record, we accept them as correct. Ex parte Kimes, 872 S.W.2d
700, 701 (Tex. Crim. App. 1993). Accepting the findings as true, we can only conclude
that a significant portion of the record was not lost or destroyed. We overrule this issue.

 Juror Lopez

 In his fourteenth issue, appellant argues his trial counsel was ineffective because
she did not challenge juror Lopez for cause. During general voir dire, the venire was asked
if they would expect or want to hear from Mata, as for instance, a parent might want to hear
from his or her children when one child says that the other child hit him first. In other
words, in order to make a fair decision, do you need to hear from that person? Several
jurors, including Lopez, responded in the affirmative. At the later bench conference, Lopez
was informed that the law says if appellant did not testify, "that you can [not] hold that
against him." Lopez replied she could follow the instruction of the court. This was
reconfirmed that Mata did not have to testify and the juror would not hold it against him. 
Lopez said: 

 Yes, I think so. Only reason I said that was that how one witness or friend,
say friends are there time, place and they would-one way would say it one
way and one would say it the other one. And if I was to prove something that
I didn't do I think I would want people to hear. That's what I meant, hear
from me. Not that getting the stories mixed up.


When asked if the appellant should take the stand and testify if he did not do anything
wrong, Lopez responded "No."

 Appellant argues that when a prospective juror is shown to be biased as a matter
of law, she must be excused when challenged, citing Anderson v. State, 633 S.W.2d 851,
854 (Tex. Crim. App. 1982) ( when a prospective juror is shown to be biased as a matter
of law, he must be excused when challenged, even if he states that he can set his bias
aside and provide a fair trial). Anderson also informs us that bias exists as a matter of law
when a prospective juror admits that he is biased for or against a defendant. Id. The State
argues, and we agree, that Lopez was not shown to be biased and therefore could not
have properly been successfully challenged for cause.

 Lopez initially indicated in response to a vague and rambling hypothetical, that she
would like to hear from the defendant. She explained that if friends were in a
disagreement, she would like them to hear from her. She also stated she could follow the
court's instruction and would not require the defendant to testify. The State cites a similar
case of initial confusion by a juror, Barefoot v. State, 596 S.W.2d 875, 883 (Tex. Crim.
App. 1980). In that case, it was obvious that the juror was initially confused as to the
relationship between appellant's right to remain silent and his right to effective assistance
of counsel. Id. Subsequent questioning by both the prosecuting attorney and defense
counsel made it clear that the juror did not expect appellant to testify or present other
evidence, but only that his attorneys would do their best on his behalf. Id. In Barefoot, the
trial court did not err by overruling the challenge for cause. Id. Similarly, a hypothetical
objection by defense counsel would not have produced error had the trial court overruled
a challenge for cause. See id.

 Because appellant does not demonstrate that trial defense counsel's performance
fell outside the boundaries of reasonable professional assistance, he fails to meet the first
prong of Strickland. See Strickland, 466 U.S. at 687-88; Hernandez, 988 S.W.2d at 770. 
Furthermore, because the record is silent as to why counsel did not object, appellant fails
to overcome the presumption that trial counsel's decision was reasonable. Rylander, 101
S.W.3d at 110. We overrule this issue.

 The judgment of the trial court is affirmed.

 

 

 DON WITTIG,

 Justice


Do not publish. 

Tex.R.App.P. 47.2(b)

Opinion on remand delivered and 

filed this the 22nd day of May, 2008. 


1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to the government code. See Tex. Gov't Code Ann. § 74.003 (Vernon 2005).